In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3009

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KAH CHOON CHAY,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01-CR-0021-C-01--Barbara B. Crabb, Chief Judge.

ARGUED DECEMBER 11, 2001--DECIDED February 28, 2002

Before BAUER, RIPPLE and ROVNER, Circuit
Judges.

RIPPLE, Circuit Judge.  After his
indictment for participating in an
international computer-program piracy
ring, Kah Choon Chay pleaded guilty to
one count of trafficking in counterfeit
documents and packaging for computer pro
grams in interstate commerce. See 18
U.S.C. sec. 2318(a). The district court
sentenced him to eight months of
incarceration, three years of supervised
release and $49,941.02 in restitution to
the owners of the copyrighted programs
that Mr. Chay had pirated. This
restitution figure is based on Mr. Chay's
gross income from sales of the illegal
programs and counterfeit packaging in the
United States. In this appeal, Mr. Chay
raises three arguments regarding the
restitution portion of his sentence. For
the reasons set forth in the following
opinion, we affirm the judgment of the
district court.

I

BACKGROUND

After meeting a "Ms. Lee" in a Kuala
Lumpur, Malaysia computer store in
December 1996, Mr. Chay, a Malaysian
citizen residing in the United States,
embarked on a scheme of international
computer-software piracy. For the next

several years, Mr. Chay bought newly released computer games in the United States and then sent them to Ms. Lee in Malaysia for copying. In return, he would receive 20 to 30 copies of the games with counterfeit packaging and instructions. These counterfeit items were so realistic that some of his subsequent customers could not distinguish them from the real products. Mr. Chay, using a variety of aliases on eBay and other electronic bulletin boards and auction sites, advertised and sold these pirated copies over the internet.

The scheme came to an end after one of Mr. Chay's former roommates, suspicious of Mr. Chay's activities, retrieved from a dumpster a box of Mr. Chay's business records and turned them over to the FBI. The records were enough to prompt an investigation during which an undercover agent bought counterfeit computer games from Mr. Chay via the internet. After confirming the former roommate's allegations, the FBI searched Mr. Chay's apartment and seized his computer, records of his illegal sales of copyrighted programs, and numerous illegally copied computer games, some still in packages bearing a Malaysian postmark.

Mr. Chay then confessed to his crimes and pleaded guilty to one count of violating 18 U.S.C. sec. 2318(a). The plea agreement, which reserved Mr. Chay's right to appeal, acknowledged his willingness to pay restitution for all the victims' losses caused by his activities:

The defendant agrees to pay restitution for all losses relating to the offense of conviction, all losses covered by the same course of conduct or common scheme or plan as the offense of conviction . . . . The exact restitution figure will be agreed upon by the parties prior to sentencing or, if the parties are unable to agree upon a specific figure, restitution will be determined by the Court at sentencing.

R. at 9. Notably, the plea agreement did not specify how the "losses" caused by Mr. Chay's activities would be calculated.

Mr. Chay and the Government could not

agree on the proper restitution figure before sentencing; accordingly, the court determined the amount of restitution and ordered that Mr. Chay pay $49,941.02 in restitution to the 52 victim companies holding copyrights that Mr. Chay had infringed. The court set the restitution amount according to charts, generated by the Government and incorporated into the Presentence Investigation Report (PSR) through an addendum. This analysis showed that Mr. Chay had grossed $49,941.02 from the sale of pirated computer games. The charts also set forth the precise amount that Mr. Chay owed each of the 52 victim copyright holders of the pirated games. The Government had computed losses for each company by multiplying the number of that company's pirated programs that Mr. Chay sold by the actual price he received for them. The charts were based on evidence obtained from eBay, Mr. Chay's computer, and the box of Mr. Chay's discarded records turned over to the FBI by Mr. Chay's former roommate; this evidence revealed how many programs Mr. Chay had sold and the price at which he had sold them.

At sentencing, Mr. Chay raised two objections to the Government's calculation of the losses caused by his piracy. The first was to the Government's determination of the number of games that had copyrights, but the court overruled the objection because Mr. Chay had presented no evidence undermining the Government's figure. The other objection concerned the restitution amount. Through counsel, Mr. Chay argued that the court should reduce the amount of restitution by his costs in producing and distributing the pirated games and programs. Mr. Chay argued that the court should use his net profit rather than his gross sales as the restitution amount. Mr. Chay did not, however, present any evidence of his costs. The court rejected his argument, stating that:

[H]e owes the legal owner the full amount of what he sold because that was a gain he never should have realized, just as I would owe you the full $50 for [a stolen watch] because it wasn't my watch to sell. Not just the difference between what the watch cost you and what I received for it, but the full amount of my gain . . . . [I]f he had costs, those are his to absorb. Those aren't

chargeable to the defendant [sic] whose copyright he stole. The copyright owners, the people that were defrauded of the opportunity to sell those games don't have to pay Mr. Chay's costs.

Tr. at 15-16.

II

DISCUSSION

On appeal, Mr. Chay raises three arguments concerning the court's order of restitution./1

A.  Victim Impact Statement

Citing only commentary to sec. 5E1.1 of the 1995 sentencing guidelines, Mr. Chay first argues that a "victim impact statement" regarding the crime's financial impact on the victim should have been included in the PSR and that the Government's failure to do so mandates a remand. Mr. Chay was, however, sentenced under the 1998 guidelines, not the 1995 guidelines. The commentary to sec. 5E1.1 of the 1998 guidelines, which was amended to conform with the Antiterrorism and Effective Death Penalty Act of 1996, see U.S.S.G. Appendix C, amendment 571, lacks the provision from the 1995 sentencing guidelines cited by Mr. Chay, and nothing else in the section requires that a victim impact statement be included in the PSR.

Federal Rule of Criminal Procedure 32(b)(4)(D) does, however, require that a PSR contain "verified information . . . containing an assessment of the financial . . . impact on any individual against whom the offense has been committed." Rule 32(b)(4)(F) also provides that "in appropriate cases, information sufficient for the court to enter an order of restitution" should be included in the PSR. These requirements were both met in this case by the Second Addendum to the PSR, which listed the individual victim companies along with the amount of loss each sustained (calculated according to the number of each company's copyrighted games that Mr. Chay sold multiplied by the price at which he sold them). This list was based on eBay records, computer logs and Mr. Chay's discarded records. Mr. Chay never specifies what additional information should have been included or

how the absence of that information affected his substantial rights.

B.  Consideration of Mr. Chay's Finances

   Mr. Chay claims that the district court should have considered his modest financial condition, revealed in the PSR, before imposing the restitution order. Mr. Chay's crime is, however, a crime against property covered by the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. sec. 3663A, which prohibits the court from examining the defendant's ability to pay restitution. See 18 U.S.C. sec. 3664(f)(1)(A); see also United States v. McIntosh, 198 F.3d 995, 1003-04 (7th Cir. 2000); United States v. Szarwark, 168 F.3d 993 (7th Cir. 1999).

C.  Calculation of Victims' Losses

   Mr. Chay also renews his contention that his restitution amount should have been reduced by the costs of his piracy because his "gain" consisted of only his profits, not gross sales.

   We review a district court's order of restitution for an abuse of discretion, and we "will disturb that order only if the sentencing court exercised its discretion using inappropriate factors or by failing to use any discretion at all." United States v. Emerson, 128 F.3d 557, 566 (7th Cir. 1997). Given this very deferential standard of review, Mr. Chay's argument is unpersuasive.

   Restitution is designed to compensate the victim for the harm suffered because of the defendant's criminal conduct. See United States v. Behrman, 235 F.3d 1049, 1052-53 (7th Cir. 2000). In determining the amount of the victims' losses, the district court relied upon Mr. Chay's gross sales to measure the victims' losses resulting from Mr. Chay's conduct. Mr. Chay submits that his costs in manufacturing and distributing the pirated programs should offset the amount of restitution due the victims.

   By focusing on his personal "gain" rather than the calculation of the victims' loss, Mr. Chay fails to address the real issue posed by the statutory scheme: whether the district court's calculation of the amount of loss Mr. Chay caused the victims was within the

bounds of its discretion. Mr. Chay's position is somewhat analogous to a bank robber asking that the amount of money he returns to a bank be offset by the cost of robbing it. We do not think the holder of the copyright ought to be required to subsidize the cost of Mr. Chay's illegal activity. Although the record in this case is sparse, we note that any other approach might well require a victim to incur double costs if, in addition to absorbing the costs of the malefactor, it had to absorb the costs associated with the failure to sell its own product in the regular course of doing business./2

   We conclude that the district court did not abuse its discretion in calculating restitution based on Mr. Chay's gross sales.

Conclusion

   For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

FOOTNOTES

/1 First, he argues that, under U.S.S.G. sec. 5E1.1, the restitution guideline, the PSR should have included a victim impact statement. Second, he asserts that the district court should have considered his ability to pay restitution before setting the amount. Third, he renews his argument that the court should have reduced the restitution amount by his costs.

   We make the preliminary observation that it appears from the record that Mr. Chay may have waived or forfeited his arguments that the PSR should have included a victim impact statement and that the district court should have considered his ability to pay restitution in setting the amount. Compare United States v. Harris, 230 F.3d 1054, 1058-59 (7th Cir. 2000) (finding waiver of issues because defendant did not raise them at sentencing), with United States v. Williams, 258 F.3d 669, 672 (7th Cir. 2001) (finding only forfeiture of issues despite defendant's failure to object at sentencing). After the district court rejected Mr. Chay's contentions that the Government incorrectly determined the number of copyrighted games and that the restitution amount should be offset by Mr. Chay's costs, the court asked Mr. Chay's counsel if he had "anything else . . . to say on Mr. Chay's be-half?", and counsel answered "not about other objections." Tr. at 17; Cf. Williams, 258 F.3d at

672. Although the record in this case is sparse, we have been unable to find any reference to the two arguments in question. When counsel responds to a court's specific invitation to raise objections on behalf of his or her client by informing the court that there are no further objections, we usually find a waiver of arguments raised for the first time on appeal because counsel intentionally relinquished the known right to raise the arguments in the district court. Id. If waived, an argument is unreviewable. Id. Our examination of this record leaves us with a lingering doubt as to whether counsel's reply ought to be considered a knowing and intentional relinquishment of a known right. Id. Although we believe the question to be a very close one, our case law counsels that waiver "should not be found lightly." Id. Here, its resolution is not outcome determinative because Mr. Chay's first two arguments on appeal would fail even when reviewing for plain error. Out of abundance of caution, therefore, we shall set forth why these two claims must fail before addressing the remaining issue.

/2 We note that this case does not present us with an occasion to explore in a definitive way the various means by which loss might be calculated. We cannot say that the district court's reliance on Mr. Chay's gross sales was an abuse of discretion.