UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.                                              No. 03-4520

JOSEPH ZIADEH,
       *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-02-273)

Argued: June 4, 2004

Decided: July 19, 2004

Before GREGORY and DUNCAN, Circuit Judges,
and Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by unpublished opinion. Judge Gregory wrote the opinion,
in which Judge Duncan and Senior Judge Beezer joined.

## COUNSEL

**ARGUED:** Joseph William Kaestner, KAESTNER, PITNEY &
JONES, P.C., Richmond, Virginia, for Appellant. Mark Anthony
Exley, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:**

Raul Novo, Midlothian, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

GREGORY, Circuit Judge:

A grand jury in the United States District Court for the Eastern District of Virginia indicted Joseph Ziadeh (hereinafter "Joseph Ziadeh" or "Appellant") on twenty counts, including mail fraud, bank fraud, money laundering, bankruptcy fraud and related offenses; Appellant's wife, Aida Ziadeh, was also indicted on seventeen counts. Joseph Ziadeh entered into a plea agreement with the government, whereby he pled guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and agreed to pay full restitution. As a result of Appellant's plea, the government also agreed to cease prosecution against Aida Ziadeh.

The district court imposed a sentence of thirty-seven months' imprisonment and also ordered Appellant to pay ten victims a total of $894,161.48 in restitution. Joseph Ziadeh timely filed his notice of appeal, asserting that the district court abused its discretion in failing to conduct an evidentiary hearing before ordering restitution, and erred by failing to consider the statutory factors of the Mandatory Victims Restitution Act (the "MVRA"), 18 U.S.C. §§ 3663A, 3664, at sentencing. The government moved to dismiss the appeal, arguing that in his plea agreement Appellant waived his right to appeal restitution. For the reasons that follow, we conclude that Appellant did not waive his right to appeal restitution and thus decline to dismiss the appeal, yet we find Appellant's claims fail on the merits. Accordingly, we affirm the restitution order imposed by the district court.

## I.

Joseph Ziadeh was president of Bell Construction Company ("Bell"). In 1996, Bell received a subcontract for approximately $6 million from the Army Corps of Engineers (the "Army Corps"). In 1998, the Army Corps terminated Bell for poor performance and failure to pay subcontractors. At the time of termination, Bell had been paid approximately $4.4 million, and owed its subcontractors in excess of $850,000. United Pacific assumed Bell's role under the subcontract and completed the job.

In 1998, the Army Corps mistakenly mailed Bell a check for $145,742 made payable to United Pacific. Joseph Ziadeh endorsed and deposited the check, and he and Aida used the funds for personal expenses. A grand jury in the Eastern District of Virginia returned a twenty-count indictment against Appellant and his wife, charging them with offenses arising from the fraudulent check cashing as well as their scheme to defraud subcontractors. In December 2002, Appellant pled guilty to bank fraud, in violation of 18 U.S.C. § 1344, and conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. In return for Appellant's plea, the government dismissed the remaining counts in the indictment and agreed not to prosecute Aida Ziadeh. In the plea agreement, Joseph Ziadeh waived his "right to appeal any sentence within the statutory maximum" and agreed to "entry of a Restitution Order for the full amount of the victims' losses as determined by the Court."

In April 2003, the district court sentenced Ziadeh to thirty-seven months' imprisonment on each count to be served concurrently, a sentence within the statutory maximum, and a five-year term of supervised release. With respect to restitution, the court found that the precise amounts owed to many victims were not ascertainable at the time of the hearing, thus in accord with 18 U.S.C. § 3664(d)(5) it ordered the government to submit a proposed restitution order within thirty days of sentencing, to which defendant could file a response within ten days. Appellant objected to the government's recommendations, and without a hearing, the court resolved all objections in favor of the government. As such, in June 2003, an order issued mandating restitution in the amount of $894,161.48 based on Appellant's course of fraudulent conduct.

Joseph Ziadeh timely filed a notice of appeal, and the government moved to dismiss the appeal. We issued an order deferring action on the government's motion to dismiss pending oral argument.

## II.

The government argues that we should dismiss Joseph Ziadeh's appeal of the district court's restitution order because the plea agreement into which Appellant entered contained a waiver of the right to appeal sentence. Appellant counters that while he waived his right to appeal a sentence of imprisonment, the language of his plea agreement does not constitute waiver of his right to challenge the restitution order. Accordingly, Appellant does not challenge the validity of the plea agreement, he merely challenges the scope of waiver.

While the Constitution does not provide criminal defendants with a right to appeal, *see Jones v. Barnes*, 463 U.S. 745, 751 (1983), Congress has accorded the right to appeal sentence, *see* 18 U.S.C. § 3742. A defendant may, however, waive this statutory right to appeal. *United States v. Wiggins*, 905 F.2d 51, 53 (4th Cir. 1990). We will enforce the waiver of a defendant's right to appeal contained in a valid plea agreement "so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" *United States v. Attar*, 38 F.3d 727, 731 (4th Cir. 1994) (quoting *United States v. Wessells*, 936 F.2d 165, 167 (4th Cir. 1991)). If during the Fed. R. Crim. P. 11 colloquy the district court fully questions a defendant regarding the waiver of his or her right to appeal, we deem such waiver valid and enforceable. *See Wessells*, 936 F.2d at 167-68. The question of whether a defendant validly waived his or her right to appeal is a question of law that we review de novo. *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992).

To determine whether the waiver clause bars an appeal from the restitution order, we must decide whether the appeal waiver was valid, and, if so, whether the challenge to restitution is within the scope of that waiver. *See United States v. Broughton-Jones*, 71 F.3d 1143, 1146 (4th Cir. 1995); *Attar*, 38 F.3d at 731 33. Plea agreements are grounded in contract law and both parties should receive the benefit of their bargains. *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993). We hold the government to a greater degree of responsi-

bility for imprecision or ambiguity in the agreement. *See United States v. Harvey*, 791 F.2d 294, 300-01 (4th Cir. 1986). Where the terms of the agreement are ambiguous, we construe them against the government. *Id.* at 303. Thus, we proceed to review both the text of the plea agreement and the Rule 11 colloquy to determine whether Ziadeh waived his right to appeal restitution.

The plea agreement, in relevant part, stated the following with regard to Appellant's right to appeal:

> The defendant is aware that the defendant's sentence will be imposed in accordance with the Sentencing Guidelines and Policy Statements. The defendant is aware that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offenses to which the defendant pleads guilty. . . . [T]he defendant knowingly waives the right to appeal any sentence within the maximum provided in the statutes of conviction (or the manner in which that sentence was determined) on the grounds set forth in [18 U.S.C. § 3742] or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.

J.A. 30-31 ¶ 4. As is clear, however, the waiver provision made no explicit reference to restitution.[1] Instead, the waiver provision largely referred to "sentence" in the context of the term of imprisonment. *See id.* (discussing "probable sentencing range" and "sentence within the maximum provided in the statutes of conviction"). As such, we find the plea agreement's waiver provision is ambiguous as to whether "sentence" includes the amount of restitution, or refers only to term of imprisonment. For example, on the one hand, restitution is part of "sentence" in the colloquial sense in that it is a determination for the

---

[1]With respect to restitution generally, the plea agreement stated that "defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses as determined by the Court," and provided that within thirty days after sentencing Appellant and Aida Ziadeh would deliver a note payable to the government in the full amount of restitution ordered by the district court, and notes that the district court would determine total loss, restitution victims and restitution amount. J.A. 30 ¶ 3.

district court after guilt has been adjudged.**2** On the other hand, restitution is not simply "imposed in accordance with the Sentencing Guidelines and Policy Statements" as the plea agreement specifies. J.A. 30 ¶ 4; *cf. United States v. Ready*, 82 F.3d 551, 559-60 (2d Cir. 1996) (holding that term "any sentence" within plea agreement's waiver of right to appeal provision did not include restitution because of ambiguity). Rather, Appellant's challenge is levied against the district court's determination of the victims and the amount owed — alleged legal errors under the MVRA, not disagreements with the district court's authority to "impose any sentence within the statutory maximum." *See* J.A. 30 ¶ 4.

In addition, during Ziadeh's Rule 11 colloquy, the district court did not ask him about waiver of the right to appeal as it pertained to restitution. Instead, after discussing maximum terms of imprisonment, preparation of the Presentence Report, and the Sentencing Guidelines, *see* Tr. at 10 (No. 3:02CR273-01, E.D. Va. Dec. 20, 2002), the following exchange transpired:

> THE COURT:  And should I impose a sentence on you, a guideline sentence on you that is less severe than what the government thinks the guidelines call for, the United States could appeal the sentence? Do you understand that?

---

**2**As a general matter, restitution is part of a criminal sentence. *See United States v. Buchey*, 810 F.2d 456, 461 (4th Cir. 1987) ("Criminal restitution . . . is part of the sentencing process [and thus] is fundamentally 'penal' in nature."); *see also United States v. Snider*, 957 F.2d 703, 706-07 (9th Cir. 1992) ("Restitution imposed as a component of the defendant's sentence is a criminal penalty, not a civil remedy."); *United States v. Satterfield*, 743 F.2d 827, 837 (11th Cir. 1984) (noting that Congress intended "to treat restitution as one of the options available to the district court in imposing an appropriate sentence"). In fact, we have previously held that restitution fell within the ambit of a more broadly worded waiver of the right to appeal a "sentence." *See Broughton-Jones*, 71 F.3d at 1147 (implicitly finding that restitution fell within waiver of right to appeal sentence, but finding grounds for appeal fell outside the waiver).

THE DEFENDANT:  Yes, sir.

THE COURT:         And according to the plea agreement you have waived your right to appeal *The Court's guideline sentence* if it falls within the limits called for by the guidelines?

THE DEFENDANT:  Yes, sir.

*Id.* at 10 (emphasis added). No discussion of waiver as to the restitution determination took place thereafter.

In short, neither the plea agreement, nor the colloquy indicates determinatively that Joseph Ziadeh was waiving his right to challenge restitution. Instead, both the terms of the agreement and the discussion of the plea during the colloquy focus on appeal rights as to the term of imprisonment. Indeed, nowhere in the record is restitution discussed in the context of Ziadeh's waiver of appellate rights. As such, in accord with settled circuit law, *see Harvey*, *supra*, we must hold the government to its end of the bargain and resolve the ambiguous language of the agreement in favor of Appellant. If the government intended the plea agreement to include a waiver of appellate rights related to restitution, it knew full well how to include such language in the plea agreement. Because of the ambiguities within the plea agreement and the absence of curative passages concerning restitution during the plea colloquy, we hold that Joseph Ziadeh did not waive the right to bring this appeal challenging the restitution order. Accordingly, we proceed to consider Appellant's claims on the merits.

### III.

On the merits, Appellant advances two interrelated arguments. Appellant asserts that while he was allowed to object to the government's proposed restitution order, the district court abused its discretion by not holding an evidentiary hearing. Appellant claims that without such a hearing he was "not given a meaningful opportunity to be heard." Although unclear from the briefs, the crux of Appellant's denial of "a meaningful opportunity to be heard" claim seem-

ingly centers on his contention that certain subcontractors listed in the restitution order were not victims of his fraudulent scheme. Relatedly, Appellant argues that in imposing restitution without an evidentiary hearing, the district court erred by failing to properly consider the MVRA when fashioning restitution.[3]

A.

Appellant contends the district court's failure to hold an evidentiary hearing constitutes reversible error. As discussed above, after the sentencing hearing, the district court ordered the government to submit a proposed restitution order, detailing the victims and amounts owed because the amounts Appellant owed victims for the purposes of restitution were not readily ascertainable, pursuant to 18 U.S.C. § 3664(d)(5). The government submitted its order and Appellant objected to the government's recommendations. Without holding an evidentiary hearing, the district court found defendant's objections lacked merit and ordered restitution in the amount of $894,161.48.

Section 3664(e) provides: "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney

---

[3]At oral argument, Appellant's counsel raised a new issue, namely whether the district court improperly imposed restitution based on relevant conduct rather than charged conduct. Because this issue was not raised within Appellant's nine-page merits brief (inclusive of table of contents, table of authorities, issues presented, statement of the case, facts and argument) — or, for that matter, his eleven-page reply brief — we hold that argument is waived. *See Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996) (holding argument not raised in opening brief, but raised for the first time in reply brief was waived); *see also Canady v. Crestar Mortgage Corp.*, 109 F.3d 969, 973-74 (4th Cir. 1997) (holding issue waived because it was not mentioned in brief, but was only raised in notice of appeal); *Tucker v. Waddell*, 83 F.3d 688, 690 n.1 (4th Cir. 1996) (stating issues not addressed in brief or oral argument are waived); *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*, 58 F.3d 988, 993 n.7 (4th Cir. 1995) (same); *United States v. Williams*, 378 F.2d 665, 666 (4th Cir. 1967) (per curiam) (holding issues argued orally but not addressed in brief were waived).

for the Government." 18 U.S.C. § 3664(e). Section 3664 does not require the district court to hold an evidentiary hearing. Rather, whether the district court should hold an evidentiary hearing is committed to the discretion of the district court, thus we review for abuse of discretion. *See Cagle v. Hutto*, 177 F.3d 253, 258 (4th Cir. 1999). The district court's determination of the amount of loss for restitution purposes is reviewed for clear error. *United States v. Dawkins*, 202 F.3d 711, 714 (4th Cir. 2000).

Appellant argues that "because of the complex nature of the case and the contradictory evidence presented by the parties prior to sentencing," the district court abused its discretion by not holding an evidentiary hearing on the issue of restitution. Br. of Appellant at 5-6. In support of his claim, Ziadeh merely offers the bald assertion that he "has denied that certain subcontractors listed by the Government in their proposed Restitution Order were even subcontractors for the purposes of the Contract, and the Government's own listing of the Final Restitution Order bears that assertion out." Br. of Appellant at 7; Reply Br. at 8. Nowhere in his briefing does Appellant specify which subcontractors should not be considered victims and which restitution amounts he continues to challenge, nor does he specify which facts he considers in "material dispute" such that an evidentiary hearing is necessary. Accordingly, it is not difficult to conclude that the district court did not abuse its discretion in failing to hold an evidentiary hearing, and did not commit error, let alone clear error, in imposing restitution of $894,161.48. *See Dawkins*, 202 F.3d at 714.

Appellant's plea agreement required him to make full restitution for "the full amount of victims' losses as determined by the [district] [c]ourt." J.A. 30 ¶ 3. First, of the total restitution ordered, it is clear that $145,742, the amount of the Army Corps' check to Union Pacific which Appellant fraudulently received, was never in dispute before the district court. Thus, the only amount ever in question would be the additional sums owed the subcontractors. However, the government and Joseph Ziadeh filed a "Statement of Facts" at the same time as they filed the plea agreement, and that filing demonstrates the amounts owed subcontractors were not properly in dispute. *See* R. Tab 25 ("Statement of Facts" Dec. 20, 2002). In the Statement of Facts, a single paragraph filing, the parties "stipulate[d] that the factual allegations contained in Count Nine of the Indictment . . . are

true." *Id.* Significantly, Count Nine of the indictment, the bank fraud count to which Appellant pled guilty, incorporated the allegations of Count Two, "Major Fraud Against the United States," ¶¶ 2-11. In those stipulations, Appellant admitted to having participated in a scheme to defraud the subcontractors. *See* J.A. at 15-17 ¶¶ 2-11 (detailing Appellant's scheme to defraud the Army Corps of money owed to Bell's subcontractors). Specifically, Appellant admitted to Paragraph 10 of Count Two, which stated that Bell owed its subcontractors $850,000, *id.* at 17 ¶ 10, and that money would have been paid had Appellant and his wife not "diverted monies from [the subcontractors] to their own use," *id.* at 17 ¶ 8.

In sum, Appellant stipulated that the fraudulent conduct to which he pled guilty had resulted in losses totaling $995,742, an amount for which he agreed to pay "full restitution" under the terms of the plea agreement. However, when the government prepared its recommended restitution order, it traced only $748,419.48 to subcontractors in addition to the $145,742 check cashed by Appellant and his wife. Thus, the total amount of restitution recommended, and eventually ordered by the district court, totaled $894,161.48, a sum $101,580.52 *less* than the amount for which Joseph Ziadeh stipulated that he was responsible.[4] In this light, we cannot conclude that the district court abused its discretion by failing to hold an evidentiary hearing, nor can we conclude that it committed a clear legal error in determining the restitution amount.

B.

Appellant also argues that we should vacate the district court's

_____

[4]Furthermore, at the sentencing hearing, the government, without objection, proffered an exhibit detailing approximately $879,000 in unpaid sums due the subcontractors. Thereafter, Ziadeh's counsel acknowledged on his client's behalf that "in many instances he came up short, and some of the contractors were not paid at that particular time. But it is Mr. Ziadeh's position . . . that he will pay any subcontractors, any material men, any person who has furnished work or whatever to the project . . . that the government can document that is owed. . . . And [Ziadeh] stands ready now to agree to make restitution to any of those people who were not paid." J.A. 122.

findings of restitution — or remand for further consideration — because it did not consider "mandatory statutory factors" in imposing restitution. *See* Br. of Appellant at 6, 8; Reply Br. at 6. He asserts that pursuant to 18 U.S.C. § 3664, in determining the restitution amount,

> the district court must make factual findings based on the record with respect to: amount of loss, defendant's ability to pay and financial need of the defendant and the defendant's dependents; and the relationship between restitution imposed and the loss caused by defendant's conduct. The district court failed to account for some of these statutory factors, and thus remand is appropriate.

Br. at 6; Reply Br. at 6. Appellant's contention is simply wrong as a legal matter.

The MVRA provides: "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses . . . *without consideration of the economic circumstances of the defendant*." 18 U.S.C. § 3664(f)(1)(A) (emphasis added). Appellant, however, ignores this clear statutory mandate and instead relies on a case, *United States v. Piche*, 981 F.2d 706, 717-18 (4th Cir. 1992), which interprets § 3664 of the MVRA's superceded predecessor statute. Under the former Victim and Witness Protection Act of 1982 (the "VWPA"), § 3664 required "the district judge to balance the victim's interest in compensation against the financial resources and circumstances of the defendant." *Id.* (internal quotation marks and citation omitted).

As the above-quoted section of the MVRA demonstrates, however, this requirement of the former-VWPA no longer exists. In *United States v. Alalade*, 204 F.3d 536 (4th Cir. 2000), we explained in detail the effect of the revisions to § 3664 with the passage of the MVRA:

> [T]he plain language of the MVRA did not grant the district court discretion to reduce the amount of restitution . . . . Critically, with passage of the MVRA, *Congress completely deleted the language of the VWPA affording the district court discretion in cases such as this to consider any factor it deemed appropriate in determining the amount of restitu-*

*tion to be ordered*, *see* 18 U.S.C.A. § 3664(a) (West 1985) (amended 1996), and replaced it with language requiring the district court to order restitution in the full amount of loss to each victim as determined by the district court, *see* 18 U.S.C.A. § 3664(f)(1)(A) (West Supp. 1999). *Furthermore, in contrast to the VWPA, the MVRA does not contain any language requiring the district court, in determining the total amount of restitution to be ordered, to consider the financial resources of the defendant or the financial needs and earning ability of the defendant and the defendant's dependents.* *Compare* 18 U.S.C.A. § 3664(f) (West Supp. 1999) *with* 18 U.S.C.A. § 3664(a) (West 1985) (amended 1996).

*Id.* at 540 (emphasis added); *see also United States v. Chay*, 281 F.3d 682, 686 (7th Cir. 2002) (holding the MVRA "prohibits the court from examining the defendant's ability to pay restitution"); *United States v. McGlothlin*, 249 F.3d 783, 784 (8th Cir. 2001) (same); *United States v. Myers*, 198 F.3d 160, 168-69 (5th Cir. 1999) (same); *United States v. Coates*, 178 F.3d 681, 683 (3d Cir. 1999) (same).[5]

---

[5]In his reply brief and at oral argument, Appellant attempted to refine his MVRA claim. In his reply brief, Appellant asserts, "[t]here is no evidence in the record that the district court, *after determining the full restitution amounts owed*, took into consideration the financial condition of the defendant, the defendant's dependents, or whether assets are jointly controlled in determining the manner and scheduling of restitution payments." Reply Br. at 10 (emphasis added). Under the MVRA, typically the court is to consider the economic circumstances of the defendant in determining whether restitution should be paid in a lump-sum, schedule of payments, or a combination of payments at specified intervals. *See* 18 U.S.C. § 3664(f)(2)-(3). Even assuming this argument was not waived, *see supra* note 3 (citing *Cavallo*), we find that it would have been superfluous, or perhaps more directly, *flatly contrary* to Appellant's plea agreement for the district court to have conducted such an inquiry. Appellant's plea agreement vitiated the need for the district court to engage in such an analysis because it stated precisely the schedule and manner by which restitution was to be paid:

[D]efendant agrees to the entry of a Restitution Order for the full amount of the victims' losses as determined by the Court. The

Accordingly, Appellant's arguments that the district court erred by failing to consider his financial circumstances in determining restitution are wholly without merit.

## IV.

For the reasons stated above, we deny the government's motion to dismiss the appeal and affirm the district court's restitution order.

*AFFIRMED*

---

> *defendant agrees that within 30 days after sentencing in this case*, the defendant and the defendant's spouse, Aida L. Ziadeh, *will make and deliver a note payable to the United States of America in the full amount of restitution ordered by the Court . . . secured by a properly recorded Deed of Trust in real property owned by the defendant and the defendant's spouse, Aida L. Ziadeh, whether individually or jointly held . . . with equity equal to the amount of restitution ordered.*

J.A. 30 ¶ 3 (emphasis added). Because this element of the plea agreement is unambiguous, Appellant's MVRA claim regarding the district court's failure to analyze his financial condition "in determining the manner and scheduling of payments" is spurious.