**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 21-4457**

─────────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DEONTE MARQUES CURRY,

Defendant – Appellant.

─────────────

**No. 21-4713**

─────────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DEONTE MARQUES CURRY,

Defendant – Appellant.

─────────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:20-cr-00126-RJC-DSC-1)

─────────────

Argued:  May 5, 2023                                    Decided: September 11, 2023

─────────────

Before AGEE and WYNN, Circuit Judges, and Henry E. HUDSON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:**  Melissa Susanne Baldwin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Julia Kay Wood, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  John G. Baker, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, Anthony J. Enright, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Mandatory Victims Restitution Act ("MVRA" or "Act") requires district courts to order defendants to make restitution to the victims of certain offenses. 18 U.S.C. § 3663A(a)(1). The Act allows courts to hold restitution open for 90 days after sentencing; however, both the Supreme Court and this Court have held that a district court may order restitution beyond the statute's 90 days. *See Dolan v. United States*, 560 U.S. 605, 608 (2010); *United States v. Johnson*, 400 F.3d 187, 199 (4th Cir. 2005).

Deonte Marques Curry pleaded guilty to multiple Hobbs Act offenses. At sentencing, the district court deferred its determination of restitution until November 9, 2021—90 days later—stating that failing a determination by that date the "restitution amount becomes $0.00 without further order from the Court." J.A. 69. On November 9, 2021, the government moved for a final determination of restitution under the Act, requesting $366,913.90 to cover the expenses of three victims. Also on that day, the court informed Curry that his responses to the government's motion were due by November 16. Curry did not respond. On December 7, 118 days after sentencing, the court ordered that the judgment be amended to include a "final restitution figure of $366,913.90." J.A. 76. Without objection, the court entered an amended judgment on December 8, 2021. J.A. 76, 82.

On appeal, Curry contends the amended judgment should be vacated with instructions to reinstate the $0 restitution amount because the district court lacked the authority to amend that judgment. He also asserts that the court improperly calculated his sentence. Finding no plain error, we affirm.

3

I.

In March of 2020, Curry and another male attempted to execute an armed robbery of a restaurant in Charlotte, North Carolina.  The men entered a side door of the business, and Curry ordered an employee to "get on the ground."  J.A. 92.  Curry carried a loaded 9mm pistol equipped with an extended magazine that he had purchased the day before.

Curry opened the kitchen door, pointed his pistol at the restaurant's owner, T.C., demanded T.C.'s wallet, and threatened to kill him.  The owner's sister, M.C., attacked Curry to defend her brother.  Curry fired his pistol several times, striking M.C. in her chest, stomach, arm, and hand.   When police arrived, Curry told them that he and his coconspirator planned to rob the restaurant together.

M.C. was seriously injured.  She spent over 21 days in the hospital and underwent surgeries on her pancreas, kidney, arm, and stomach.  Physicians removed her spleen.

Curry pleaded guilty to two offenses under the Hobbs Act, 18 U.S.C. § 1951.  The probation office prepared a presentence report concluding, among other things, that Curry's offenses received a base offense level of 20 under the "Robbery" guideline, U.S.S.G. § 2B3.1(a).  The report included a recommended 7-level upward adjustment under § 2B3.1(b)(2)(A) because "a firearm was discharged."   J.A. 96.   The report also recommended implementing § 2B3.1(b)(3)(C), which allows for an additional 6-level upward adjustment, because a "robbery victim sustained [a] permanent or life-threatening bodily injury."  J.A. 96.  But because § 2B3.1(b)(3)(C) specifies that the "cumulative adjustments" under § 2B3.1(b)(2) and (3) "shall not exceed 11 levels" and Curry received the 7-level adjustment for his firearm discharge, he received only a 4-level upward

4

adjustment under § 2B3.1(b)(3)(C). Curry also earned a 3-level downward adjustment for acceptance of responsibility.

The report explained that M.C. had contacted the probation office and was in the "process of completing a victim impact statement as well as gathering restitution information." J.A. 95. The report further stated that restitution information "will be forwarded to the Court upon receipt" and under the MVRA, "restitution shall be ordered." J.A. 103.

Based on the advisory guidelines, the report determined that 78–97 months was the appropriate guidelines range. Curry did not file an objection to the report, both parties agreed that the guidelines were properly calculated, and the court adopted the report without objection.

At a sentencing hearing, Curry asked for a sentence of 78 months. For its part, the government requested an upward variant sentence of 194 months, arguing that a guideline sentence inadequately reflected the serious nature of Curry's inhumane, violent act. It showed the court the video footage of the armed robbery and introduced M.C.'s medical records that described her injuries in detail. Additionally, M.C. addressed the court and stated that her "whole body hurts every day." J.A. 49. She also said that her fiancé, with whom she was "planning on having a child one day," left her "because of all this," and, as a result, the opportunity to have children was "taken away from [her]." J.A. 50. Through a victim impact statement, M.C.'s mother, who was also at the restaurant during the robbery,

similarly stated that "M.C. and her fiancé . . . were working to have [a] baby, [but] now that can't be anymore, so because of the incident she [can't] be a mother." J.A. 256.[1]

Additionally, the government asked the court to leave the restitution amount open so it could collect and verify information from the victims. Curry did not object to this request.

When imposing its sentence, the court explained that an upward variance was appropriate because of, among numerous other factors, the violent nature of the crime and the severity of the victim's injuries. Specifically, the court considered how M.C. was shot four times, had to have her spleen removed, and underwent surgery on multiple organs. It also concluded "that she still has a bullet in her stomach" and there was "testimony that [Curry's conduct] has had lifelong impacts, she hurts every day, she is frightened every day, [and has] issues related to childbearing," all of which amount to "an extreme injury to the victim." J.A. 55.

The court noted that it had two options that it could use as a guide for a possible upward variance. First, the court could consider what Curry's sentence would have been if the court cross-referenced the attempted murder guidelines because Curry threatened to kill the victims and discharged his weapon. Or, second, it could consider "giving the full adjustment for the discharge of the firearm" and "the permanent injuries sustained by the victim" under § 2B3.1(b), which the guidelines limited to an 11-level upward adjustment,

---

[1] There was no record evidence that M.C. suffered a physical injury to any part of her reproductive system.

as previously explained. J.A. 56. The court chose the latter option, departed two levels, and imposed a sentence of 120 months on each count, to be served concurrently. It explained that the sentence was sufficient but not greater than necessary to "accomplish the 3553(a) factors," which it described on the record. J.A. 57. The court also noted that it considered the serious nature of the offense, the "life-altering injuries" the victim suffered, Curry's callous disregard for life, and his lack of a criminal history.

Finally, the court stated that it would "hold open the issue of restitution in order to make a reasoned decision with respect to medical bills and other costs associated with the offense conduct." J.A. 59.

Thereafter, Curry objected that "any reference to attempted murder or murder cross-reference would be a departure versus a variance." J.A. 59–60. Curry did not dispute any of the underlying facts mentioned by the court, did not indicate that he changed his earlier-stated position that the court's guidelines determination was correct, and did not say anything about restitution or the court's decision to defer its final determination of it.

The court entered its initial judgment on August 25, 2021 (the "August judgment"). Because the court was waiting for restitution information, the judgment stated that the restitution amount Curry shall pay is "$TBD" and "[t]he determination of restitution is deferred until 11/9/2021"—90 days after the hearing. J.A. 69. It noted that "[u]pon such a determination an *Amended Judgment in a Criminal Case (AO 245C)* will be entered. Failing such a determination by 11/9/2021, restitution amount becomes $0.00 without further order from the Court." J.A. 69.

7

On November 9, 90 days after Curry's sentencing, the government moved for a final determination of restitution under the MVRA. The motion requested a total of $366,913.90 for the three victims' expenses and cited four exhibits and over 100 pages of statements and supporting documents. The government also filed a motion to seal the exhibits supporting its restitution request. That same day, the court informed Curry that his response to the government's motion was due by November 16. The next day, the district court granted the government's motion to seal and the government filed its restitution exhibits. Curry never responded or objected to the timing of the government's motion, did not request a restitution hearing, and did not dispute the amount of restitution the government requested.

On December 7, 118 days after sentencing, the court ordered that the judgment be amended to include a "final restitution figure of $366,913.90." J.A. 76.[2] The court found that the government timely proposed a list of victims and losses and that the list was supported by a preponderance of the evidence. Without any objection, the court entered an amended judgment the next day.

Curry appeals, bringing 2 challenges to the district court's decisions. He first argues that the district court lacked statutory authority to modify the $0 restitution amount specified in the August judgment. Then, Curry asserts that the district court abused its discretion by relying on clearly erroneous factual findings when sentencing him.

---

[2] The court issued both an order, J.A. 76–77, and an accompanying amended judgment, J.A. 78–81.

We have jurisdiction under 28 U.S.C. § 1291.

## II.

Because Curry raised no objections below, we review for plain error only. *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021). Under plain error review, Curry is entitled to relief only if he can

> satisfy three threshold requirements. *First*, there must be an error. *Second*, the error must be plain. *Third*, the error must affect substantial rights, which generally means that there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different. If those three requirements are met, an appellate court may grant relief if it concludes that the error has a serious effect on the fairness, integrity or public reputation of judicial proceedings.

*Id.* at 2096–97 (internal quotation marks and citations omitted). Curry bears the burden of persuasion at each step of the inquiry, and "[s]atisfying all four prongs of the plain-error test 'is difficult.'" *Id.* at 2097 (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

## III.

We turn first to the restitution question. Curry posits that the district court made three errors in ordering the $366,913.90 restitution amount. First, Curry contends that the district court plainly erred when it modified the restitution amount because it did so without statutory authority. Second, he argues that even if the district court did have the authority to modify restitution, it nevertheless violated Curry's procedural rights because he was not adequately notified that the judge was contemplating modifying the initial restitution judgment. Third, Curry suggests that the district court also violated Federal Rule of Criminal Procedure 32 by failing to allow him to comment on matters related to sentencing.

9

He asserts that his substantial rights were affected in that but for these errors, he would have been sentenced to a $0, rather than $366,913.90, restitution amount.

The government responds that the August judgment is not a "final judgment" of restitution under 18 U.S.C. § 3664(o) because it did not "impose an order of restitution," as defined by 18 U.S.C. § 3663A(b).  And even if it were a final judgment, the government maintains that the district court had the authority to amend it under § 3664(d)(5).  It also asserts that Curry was provided a full and fair opportunity to respond to the government's request for a restitution determination, but Curry failed to utilize that opportunity through no fault of the district court. Essentially, the government disagrees with Curry at every step of the plain-error path.  In its view, there was no error at all, let alone plain error, and Curry cannot show his substantial rights were affected.

We address the merits of each argument in turn and then consider whether, even if there was plain error, that error affected Curry's substantial rights.

### A.

We first consider whether there was error and, if so, whether the error was plain. "Deviation from a legal rule is 'error' unless the rule has been waived." *United States v. Olano*, 507 U.S. 725, 732–33 (1993).  An error is "plain" if the error is "clear" or "obvious." *Id.* at 733.

Beginning with Curry's assertion that the district court did not have the authority to amend the $0 restitution determination, we conclude that the district court did not plainly err. The MVRA provides that a district court "shall order . . . that the defendant make restitution to the victim of the offense" in addition to any other penalty authorized by law.

10

18 U.S.C. § 3663A(a)(1). Generally, the probation office includes information sufficient to fashion a restitution order in the presentence report. *Id.* § 3664(a). But,

> [i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.

*Id.* § 3664(d)(5).      The district court relied on this provision to postpone imposing restitution until November 9, 90 days after sentencing. However, the district court ultimately determined restitution after the 90-day deadline passed.

Importantly, missing the deadline alone would not be a dispositive issue because in *Dolan v. United States*, the Supreme Court concluded "that a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution—at least where, as here, the sentencing court made clear before the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." 560 U.S. at 608. "The fact that the sentencing court misses the statute's 90-day deadline, *even through its own fault or that of the Governme*nt, does not deprive the court of the power to order restitution." *Id.* at 610 (emphasis added). The Supreme Court reasoned that the purpose of the MVRA is to impose restitution on defendants and to ensure that victims of a crime receive full restitution. *Id.* at 612. And to deprive the sentencing court of the power to order restitution after the 90-day deadline would harm the victims of the crime who likely bear no responsibility for the delay. *Id.* at 613. In *Dolan*, though, the sentencing court did not order any other amount of restitution or otherwise include a default restitution amount that would take effect if restitution were not determined by a certain date.

Consistent with the Supreme Court's holding in *Dolan*, this Court has similarly concluded that district courts may enter restitution orders more than 90 days after sentencing provided that the delay does not prejudice the defendant. *Johnson*, 400 F.3d at 199. This is because "[t]he purpose behind the statutory ninety-day limit on the determination of victims' losses is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather, it is to protect crime victims from the willful dissipation of defendants' assets." *Id.* (bracket omitted) (quoting *United States v. Zakhary*, 357 F.3d 186, 191 (2d Cir. 2004)). "[A]bsent a defendant's clear showing that his substantial rights have been prejudiced by a § 3664(d)(5) delay, it would in fact, defeat the statutory purpose to allow a defendant to invoke this provision in order to avoid paying restitution to the victims of his crime." *Id.* (quoting *Zakhary*, 357 F.3d at 192–93).

Thus, that the district court missed the 90-day deadline due to the delay of the government is not outcome determinative. Instead, the difficulty here arises because the district court's August judgment appeared to indicate that restitution would become $0 if a different amount was not determined by November 9. As previously noted, at sentencing, the district court stated that it would hold restitution open "to make a reasoned decision with respect to medical bills and other costs." J.A. 59. The August judgment further provided that the amount of restitution the defendant shall pay was "$TBD," and stated that "[f]ailing such a determination by 11/9/2021, restitution amount becomes $0.00 without further order from the Court." J.A. 69. A determination was not made by November 9. Instead, on November 9, the government moved for a final determination

12

and, 28 days later, the court amended the judgment to include a "final restitution figure of $366,913.90." J.A. 76.

These circumstances are slightly different than those in *Dolan* and *Johnson* because in those cases the district court plainly held open the determination of restitution. In other words, the district courts in those cases did not have restitution orders with alternate or default provisions in place. Here, arguably, the district court had ordered that the restitution amount was $0, and its later $366,913.90 restitution determination amended that prior $0 restitution order.

That December 8, 2021 amendment brings about a distinct issue not present in *Dolan* and *Johnson* because § 3664(o) of the MVRA states that "[a] sentence that imposes an order of restitution is a final judgment." That provision then lists four specific ways in which that final judgment can be corrected, modified, amended, or adjusted. 18 U.S.C. § 3664(o).[3]  One of the ways it can be "amended" is through § 3664(d)(5)—the subsection referenced above which allows the district court to defer a restitution determination for

---

[3] The circuits are split on whether § 3664(o)'s list is exhaustive or it allows a district court to amend a restitution order in other circumstances. *Compare United States v. Puentes*, 803 F.3d 597, 599 (11th Cir. 2015) (concluding that § 3663(o) "provides an exhaustive list of the ways in which a mandatory restitution order can be modified"); *United States v. Wyss*, 744 F.3d 1214, 1218–20 (10th Cir 2014) (same), *with United States v. Phillips*, 9 F.4th 382, 384–85 (6th Cir. 2021) (determining that § 3664(o) is "a list of possibilities" and not an exclusive list). This Court has not specifically joined the debate, though there is some language that suggests the Court believes § 3664(o)'s list is exhaustive. *See United States v. Grant*, 715 F.3d 552, 557–58 (4th Cir. 2013) (stating that the Court was "extremely skeptical" that other exceptions existed "[i]n the face of § 3664(o)'s seemingly comprehensive language"). Nonetheless, we need not answer that question today because, as will be discussed, even if § 3664(o)'s list is exhaustive, the district court relied on one of its enumerated amendment options.

90 days in certain circumstances. *Id.* § 3664(o)(1)(C). The question here becomes whether this difference—that the restitution amount was no longer left open and had to be amended—makes *Dolan* inapplicable and therefore left the district court without authority to amend Curry's restitution amount.

Ultimately, we need not decide whether *Dolan* applies to this scenario; it is enough for our purposes that it is not clearly obvious that *Dolan* is inapplicable. *Olano*, 507 U.S. at 734 ("'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'").  To be sure, in making its decision in *Dolan*, the Supreme Court relied on the fact that the defendant had notice that he would be required to pay some amount and all that was left to be determined was the amount of restitution. In fact, it specifically noted that the district court continued to have authority to amend the restitution amount after the 90-day deadline "at least where . . . the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than ninety days) only the amount." *Dolan*, 560 U.S. at 607. And here, the district court arguably did not leave the restitution amount open because on November 9, the restitution amount defaulted to $0.

But, like *Dolan*, this case involves a situation in which the district court properly deferred determination of restitution under subsection (d)(5) and various circumstances prevented the accurate determination from taking place until after the deadline. *See id.* at 611 ("The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution.").

14

Moreover, much of *Dolan*'s reasoning applies with equal force to this case. For example, Curry was on notice that the district court would order restitution. While it's true that a final determination was not made by November 9, 2021, the government did move for a final determination on that day and the district court informed Curry that he had until November 16, 2021, to respond. The district court also granted the government's motion to seal the exhibits supporting its motion. This should have indicated to Curry that the district court was considering amending the restitution determination.

Additionally, to deprive the sentencing court of the power to amend its restitution order here would harm the victims of crime "who likely bear no responsibility for the deadline's being missed and who the statute seeks to benefit." *Dolan*, 560 U.S. at 613–14. This is especially true here because had the government filed its motion earlier, there would be no question that the district court has the authority to amend its judgment to reflect the correct amount of restitution by November 9.

Finally, the MVRA's text "places primary weight upon, and emphasizes the importance of, imposing restitution upon those convicted of certain federal crimes." *Id.* at 612. The MVRA even states that restitution "shall" be ordered. *Id.* (citing 18 U.S.C. § 3664(f)(1)(A)).

Each of these reasons supports the conclusion that although an alternate default $0 restitution determination may have been ordered as of November 9, the district court had the power to amend that determination outside of the 90-day window. *See Johnson*, 400 F.3d at 199 ("Absent a defendant's clear showing that his substantial rights have been prejudiced by a § 3664(d)(5) delay, it would in fact, defeat the statutory purpose to allow

15

a defendant to invoke this provision in order to avoid paying restitution to the victims of his crimes." (cleaned up)). At the very least, these reasons suggest that *Dolan* may apply to these circumstances, and the district court thus did not plainly err by amending its restitution order more than 90 days after the sentencing hearing.

We next turn to Curry's due process argument. Curry contends that even if this Court finds that the district court was authorized by statute to modify the restitution amount, it should nevertheless vacate the amended judgment because it violated his due process rights by "order[ing] an amended judgment that added hundreds of thousands of dollars in restitutionary obligations without giving any indication that it was contemplating reversing its November 9th deadline and granting the government's untimely restitution request." Opening Br. at 16–17.

The record does not support Curry's contentions. Curry received timely notice of the government's request through the district court's electronic filing system, and the court explicitly invited Curry to comment, informing him that any "Responses" were "due by 11/16/2021." J.A. 3, 8. Curry does not dispute that he received the government's request or the court's notice of the deadline. And he chose not to take advantage of the opportunity to respond to that motion. He did not oppose the timing or substance of the government's motion even after the district court granted the government's motion to seal its exhibits, indicating the district court's intent to consider the motion. Moreover, Curry did not request a restitution hearing, nor is a district court required to hold one. *United States v. Ziadeh*, 104 F. App'x 869, 874 (4th Cir. 2004) (stating whether to hold a hearing is "committed to the discretion of the district court"). Additionally, there was no "dispute as

16

to the proper amount or type of restitution" for the court to "resolve[]." 18 U.S.C. § 3664(e).

Curry's Rule 32 argument similarly fails. Curry asserts that the district court violated Federal Rule of Criminal Procedure 32, which requires that a defendant be allowed to comment on matters relating to an appropriate sentence and applies to restitution orders. *See* Fed. R. Crim. P. 32(i)(1)(c); 18 U.S.C. § 3664(c). Section 3664(c), governing the procedure for issuance and the enforcement of restitution, states that provisions of chapters 232 and 227 of the United States Code "and Rule 32(c) of the Federal Rules of Criminal Procedure shall be the only rules applicable to proceedings under" it. 18 U.S.C. § 3664(c). Curry's argument centers around Rule 32(i), which is thus not applicable to restitution proceedings under the plain language of the statute. As such, Curry's argument is without merit.

Accordingly, we find no plain error in the district court's restitution decision.

### B.

Even if we could find error in the district court's approach, we agree with the government that Curry cannot show that his substantial rights were affected as a result of the alleged errors. The substantial rights inquiry requires Curry to "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 189 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)). The error must also "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Davis*, 855 F.3d 587, 595 (4th Cir. 2017).

17

Curry argues that "[a]bsent the district court's error, [he] would have been sentenced to a zero-dollar restitution order rather than a $366,913.90 restitution order." Reply Br. at 17. But Curry provides no evidence that the amount of restitution would have changed if the court had entered its final restitution order within 90 days of sentencing. *See United States v. Seignious*, 757 F.3d 155, 162 (4th Cir. 2014) (holding that the defendant failed to carry his burden on appeal of demonstrating that such error affected his substantial rights where "[t]he record leaves no doubt that the district court would have imposed the same amount of restitution on [the defendant] regardless of whether every requirement of § 3664(a)–(d) had been meticulously met in his case"). In fact, Curry fails to argue that the court's restitution amount is erroneous. Accordingly, we conclude that no "reasonable probability" exists that the "outcome" of the court's restitution decision would have changed absent the district court's alleged error. *Molina-Martinez*, 578 U.S. at 189.

Furthermore, Curry has not shown that the alleged error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Davis*, 855 F.3d at 595. The evidence that the victims of Curry's shooting were entitled to mandatory restitution was "overwhelming and essentially uncontroverted." *United States v. Denton*, 944 F.3d 170, 182 (4th Cir. 2019). The primary purpose of the MVRA is to benefit victims, individuals who "bear no responsibility" for the things about which Curry complains. *Dolan*, 560 U.S. at 605. Indeed, permitting Curry to bypass the district court and challenge the restitution awarded to his victims for the first time on appeal would undermine the fairness, integrity, and reputation of judicial proceedings.

18

IV.

Finally, we turn briefly to Curry's allegation that the district court's upward variant sentence was procedurally unreasonable. Because Curry did not object below,[4] this issue is likewise reviewed for plain error. *See United States v. Carthorne*, 726 F.3d 503, 509 (4th Cir. 2013).

A defendant has a due process right to be sentenced based on accurate information. *United States v. Tucker*, 404 U.S. 443, 447 (1972). Curry contends the district court made two clearly erroneous factual findings: (1) that the victim suffered childbearing injuries, and (2) that the district court could cross-reference to the attempted first-degree murder guideline. He also argues the district court improperly calculated his guideline range.

As to the first argument, Curry maintains the district court erred because it relied on its belief that the victim suffered from "issues related to childbearing," J.A. 54–55, when "there is nothing in the record to support finding that the victim's ability to have a child was impacted by the attempted robbery," Opening Br. at 34.

---

[4] Although Curry contends that he preserved his objections to the district court's "factual findings" and "calculat[ion]" of his "guideline range" by requesting "a sentence different than the one imposed," Opening Br. at 31, the decision upon which he relies does not support his contention. *United States v. Lynn* holds that a defendant, by "drawing arguments from § 3553 for a sentence different than the one ultimately imposed," preserves an "objection *to the district court's explanation of the sentence*." 592 F.3d 572, 581 (4th Cir. 2010) (emphasis added). Lodging one specific claim of procedural sentencing error before the district court "does not preserve for appeal a different claim of procedural sentencing error." *Id.* at 579 n.4. Curry did not preserve his challenges to the district court's factual findings and guideline calculations merely by asking for a lower sentence than what he ultimately received. *Id.*

This argument fails. Although it is true that there is no indication in the record that Curry injured any part of M.C.'s reproductive system or that M.C. is physically unable to have children as a result of the incident, the record does include undisputed statements from M.C. and her mother that M.C. experienced *issues* related to childbearing. For example, M.C. stated that she and her fiancé were "planning to have a child one day," J.A. 50, and that Curry took that opportunity from her because, as a result of the robbery, M.C.'s relationship with her fiancé ended. J.A. 117; *see also* J.A. 117 ("We were also working on having children which clearly has now stopped because of this."). In other words, prior to this incident, M.C. planned to have children in the foreseeable future, but now that she no longer has a fiancé, that plan has changed and children are no longer imminent. Thus, that M.C. experienced "*issues* related to childbearing," J.A. 55 (emphasis added), is an entirely "plausible" account of the evidence, *United States v. Ferebee*, 957 F.3d 406, 417 (4th Cir. 2020) (discussing the clear-error standard).[5]

Moreover, in determining Curry's sentence, the district court considered a plethora of other consequences that M.C. suffered due to Curry's conduct. For example, the court noted that M.C. suffered the "removal of a spleen," the loss of "part of her pancreas," and injuries to her "kidney, left arm," and "stomach." J.A. 55. The court noted that a bullet remained inside her stomach at the time of the sentencing hearing and that she "hurts" and "is frightened every day." J.A. 54–55. Based on these summations, the court concluded

---

[5] Contrary to Curry's position, *issues* related to childbearing is not synonymous with *physical injuries* related to childbearing.

20

that M.C. suffered injuries that are "permanent," "serious," "severe," and "life-altering." J.A. 55–57.

Thus, even if the court had not found that M.C. experienced any issues related to childbearing, its findings would establish that Curry's conduct caused M.C. severe, permanent, life-altering injuries that justified an upward variance. No "reasonable probability" exists that the court would have imposed a shorter sentence if it had not found childbearing issues among the slew of other severe injuries M.C. undisputedly suffered. *See Molina-Martinez*, 578 U.S. at 189. Curry's first argument is therefore without merit.

Curry's second argument is similarly unavailing. He maintains that the district court erred by suggesting that it could cross-reference to the attempted murder guidelines. As noted, the district court described the "attempted murder guidelines" as one of two options it "could consider" as a guide for an upward variance. J.A. 55–56. However, it explicitly stated that it would not use the attempted-murder-guideline option and would instead "choose" a methodology that used the full, independent value of the offense-level adjustments described in § 2B3.1(b)(2) and (b)(3) of the guidelines as a guide for the court's upward variance. J.A. 56–57. The court's brief contemplation of using the attempted murder guidelines did not affect Curry's sentence because the court did not follow that methodology. Curry therefore cannot establish any error, let alone a plain error that affected his substantial rights and that seriously affects the fairness, integrity, or reputation of judicial proceedings.

We finally turn to Curry's contention that the district court improperly calculated his guideline range. Curry appears to have conceded this argument. *See* Reply Br. at 19

21

("Mr. Curry concedes that he failed to preserve his challenge to the guideline calculation and that he cannot establish the erroneous use of § 2B3.1 affected his substantial rights."). Therefore, we see no need to address this issue.

IV.

Accordingly, we affirm the district court's imposition of restitution and its selection of Curry's sentence.

*AFFIRMED*