UNITED STATES of America,
Plaintiff–Appellee,

v.

Wayne Lewis WESSELLS,
Defendant–Appellant
(Three Cases).

Nos. 90–5196, 90–5197 and 90–5198.

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1991.

Decided June 11, 1991.

Laura D. Estrin, John Kenneth Zwerling, Zwerling, Mark & Sutherland, P.C., Alexandria, Va., for defendant-appellant.

Marcus John Davis, Sp. Asst. U.S. Atty., argued (Henry E. Hudson, U.S. Atty., on brief), Alexandria, Va., for plaintiff-appellee.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

ERVIN, Chief Judge:

This appeal challenges the propriety of the district court's grouping of offenses for sentencing purposes under Sections 3D1.1 *et seq.* of the federal Sentencing Guidelines. Finding that this appeal is not precluded by the waiver of right to appeal sentencing which the defendant signed as part of his plea agreement, we affirm the district court's sentencing.

## I.

On March 16, 1988, police in Arlington County, Virginia discovered twenty-one firearms at the home of Wayne Wessells. Eighteen of these firearms, having moved in interstate commerce, were subject to the provisions of Title I of the Gun Control Act of 1968, 18 U.S.C. §§ 921 *et seq.* (GCA). Two of the guns, an Uzi .45 caliber carbine with a sawed-off barrel and an unmarked .25 caliber pen gun, came under the provenance of the National Firearms Act of 1934, 26 U.S.C. §§ 5801 *et seq.,* as amended by Title II of the GCA (NFA). The federal Bureau of Alcohol, Tobacco and Firearms (BATF) seized all of these guns because Wessells, who had been convicted of bribery in 1981, was not legally able to possess firearms. Wessells was not arrested.

During the ensuing year, Wessells sought to recover the firearms. After verifying Wessells' status as a felon, BATF agents advised him that he could not lawfully receive or possess any firearm. Nonetheless, Wessells made several purchases of firearms in Virginia between April 15, 1988 and July 2, 1989. These firearms included a 9mm Uzi carbine with a 16.1–inch barrel and a .223 caliber assault rifle. At each transaction Wessells executed BATF Forms 4473 certifying that he was not a convicted felon.

On August 10, 1989, Wessells left Virginia, transporting certain possessions by boat to his new residence in Florida. The Coast Guard stopped Wessells' boat off the South Carolina coast in connection with a routine customs inspection. The officers seized eleven firearms, most of which were loaded, and over 2800 rounds of ammunition, as well as the boat. Again, Wessells was not arrested.

Following this seizure, Wessells revisited Virginia and purchased an additional five firearms, including another .223 assault rifle, from a federally licensed dealer there in two transactions, using his former Virginia address as his place of residence. On both occasions Wessells executed a Form 4473 certifying that he was not a convicted felon. In addition, in January 1990 Wessells bought a 12–gauge "Street Sweeper" shotgun and a revolver from a licensed dealer in Tampa, Florida, signing a Form 4473 in each of these transactions as well.

Wessells was arrested at his Florida residence on January 26, 1990, on a warrant issued by the Eastern District of Virginia pertaining to the Virginia offenses. A search conducted pursuant to a federal search warrant yielded eleven firearms in the residence, seven of which were loaded. Wessells himself was armed with a loaded revolver at the time of the search. On the day following this seizure, Wessells advised one of the Florida firearms dealers from whom he had purchased that he had lied about his status as a convicted felon in connection with a then pending firearms purchase. Hoping to avoid losing his deposit, Wessells tried to persuade the dealer to deliver the firearm to Wessells' son, but the dealer declined to do so.

On February 6, 1990, Wessells was indicted in the United States District Court for the Eastern District of Virginia at Alexandria on eighteen counts naming the following violations which occurred in the Eastern District of Virginia between March 16, 1988 and October 17, 1989: six counts of making false statements to federally licensed firearms dealers in connection with firearms transfers, in violation of 18 U.S.C. § 922(a)(6); seven counts of receipt and possession of firearms by a person convicted of a felony, in violation of 18 U.S.C. § 922(g)(1); two counts of possession of unregistered firearms, in violation of 26 U.S.C. § 5861(d); two counts of possession of firearms which were made in violation of the provisions of Title 26 U.S.C. Chapter 53, in violation of 26 U.S.C. § 5861(c); and one count of possession of a firearm not identified by serial number, in violation of 26 U.S.C. § 5861(i).

On April 30, 1990, a two-count information filed in the Middle District of Florida charged Wessells with one count each of violations of 18 U.S.C. §§ 922(g)(1) and (a)(6). At Wessells' request and with the approval of the United States Attorneys in the Eastern District of Virginia and the Middle District of Florida, the Florida case

was transferred to the Eastern District of Virginia under Fed.R.Crim.P. 20. On May 3, 1990, a grand jury in the District of South Carolina indicted Wessells on two counts involving violations of 18 U.S.C. § 922(g) and 26 U.S.C. § 5861(d). With the cooperation of Wessells and both United States Attorneys involved, this case likewise was transferred to the Eastern District of Virginia.

As part of a plea agreement, Wessells pled guilty to all eighteen counts of the Virginia indictment and agreed to plead guilty to two counts in each of the Florida and South Carolina cases (the "Rule 20" cases). The plea agreement contained a provision by which Wessells waived all rights under 18 U.S.C. § 3742(a) or any other ground to appeal any sentence imposed by the district court. For its part, the government agreed not to prosecute any additional charges arising from either of the Rule 20 cases. The government also agreed not to seek consecutive sentencing on either Rule 20 case to the Virginia case, but reserved the right to assert that both cases should be viewed as separate units for purposes of a combined offense level increase under Section 3D1.4 of the federal Sentencing Guidelines. Wessells entered his guilty pleas in the Rule 20 cases on June 13, 1990.

At a sentencing hearing held on June 15, 1990, the district court sentenced Wessells to twenty-one months' imprisonment on each of the twenty-two counts, to be served concurrently. The court grouped the twenty-two counts into three groups of closely-related offenses constituting three independent courses of criminal conduct under Guidelines Sections 3D1.1 *et seq.* To the base offense level of 12 thus achieved,[1] the court then added three levels for the three separate groupings of offenses as directed by Section 3D1.4, to arrive at a base offense level of 15. A two-level adjustment for acceptance of responsibility resulted in a final base level of 13. With Wessells' criminal history category of II, the resulting Guidelines sentencing range was 15–21

months. The court refused to reduce the offense level to 6 at Wessells' urging that the guns were used solely for sporting or collection purposes. The court also refused Wessells' request for a downward departure from the Guidelines range on the basis of Wessells' assertedly poor physical condition. Wessells' appeal followed.

## II.

On appeal, Wessells asserts that the district court improperly applied Sections 3D1.1 *et seq.* of the Sentencing Guidelines by failing to group all twenty-two offenses into one single group for purposes of determining his base offense level. Before we reach this issue, however, we must address the government's claim that the waiver of right to appeal sentencing that Wessells signed as part of his plea agreement prohibits the bringing of this appeal.

■ It is clear that a defendant may, in a valid plea agreement, waive the right of appeal under Section 3742(a), just as more fundamental rights such as the right to counsel and the right to a jury trial may be waived. *United States v. Wiggins*, 905 F.2d 51 (4th Cir.1990); *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir.1989). Such a waiver, however, is effective only insofar as it is the result of a knowing and intelligent decision to forego the right to appeal.

In *United States v. Wiggins, supra*, the district court went to elaborate lengths during the defendant's Rule 11 hearing to ascertain that the defendant did indeed understand the meaning of the waiver he was preparing to sign. In response to the court's questioning, Wiggins assured the court that he fully understood the implications of his decision to waive his right to appeal or challenge his sentence. He stated as well that he had discussed with his attorney how the Guidelines might apply to his case. 905 F.2d at 53–54. We found that the circumstances surrounding Wiggins' adoption of the plea agreement were

---

1. The district court was applying the pre–1989 Sentencing Guidelines, which provide for offense levels of 9 and 12 for firearms offenses § 2K2.1 and § 2K2.2, respectively. United States Sentencing Commission, *Guidelines Manual*, §§ 2K2.1, 2K2.2 (Oct.1987).

wholly sufficient to establish that his waiver of the right to appeal his sentence was a voluntary and intelligent act. *Id.* at 54.

■ In contrast, the transcript of Wessells' Rule 11 hearing before the district court reveals that the court did not question Wessells specifically concerning the waiver provision of the plea agreement. Wessells himself gave no indication of the degree to which he understood the waiver's import. The only statement that addresses that issue came from Wessells' attorney, who told the court that he had advised Wessells that the waiver would *not* prevent Wessells from appealing an improper application of the Guidelines. The district court corroborated the attorney's understanding of the scope of the waiver provision. Thus it is clear that Wessells did not knowingly agree to an absolute waiver of all rights to appeal his sentencing.

### III.

■ We turn now to the merits of Wessells' appeal. We review a question involving the legal interpretation of Guidelines terminology and the application of that terminology to a particular set of facts *de novo*, as a matter of law. *United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir. 1989).

■ Wessells was charged with multiple offenses involving the illegal receipt and possession of firearms.[2] The Sentencing Guidelines provide for encompassing multiple counts within a single "combined" offense level. U.S.S.G. §§ 3D1.1 *et seq.* The Sentencing Commission's purpose in creating this provision was twofold: to prevent multiple punishment for substantially identical offense conduct, while still ensuring incremental punishment for significant additional criminal conduct. U.S.S.G. Part D: Introductory Commentary; *United States v. Toler,* 901 F.2d 399, 402 (4th Cir.1990).

Guidelines Section 3D1.2 outlines types of multiple counts for which grouping the counts to achieve a single combined offense level is appropriate, and lists offenses which must and must not be grouped. Since under the 1987 Guidelines Wessells' firearms offenses are not among those for which Section 3D1.2 either requires or prohibits grouping, the decision of whether grouping was appropriate was within the district court's discretion. The Guidelines direct the court to resolve ambiguities in accordance with the purpose of the Multiple Counts section, which is to identify and group counts involving substantially the same harm. U.S.S.G. § 3D1.2, Application Note 2.

Wessells claims that, because his offense behavior was ongoing or continuous in nature and was part of one common scheme or plan, the district court should have grouped his offenses so as to arrive at one combined base offense level.[3] U.S.S.G. § 3D1.2(d). Citing *United States v. Young,* 916 F.2d 147, 151 (4th Cir.1990), Wessells asserts that failure to group when it is required is a misapplication of the Guidelines sufficient to vacate a sentence.

The district court found, however, that the events involved in Wessells' offenses constituted not one common plan, but three independent courses of criminal conduct: the weapons seizure in Virginia on March 16, 1988; the purchases made in Virginia between April 1988 and July 1989 and the firearms seizure in South Carolina in August 1989; and the October 1989 purchases in Virginia and the Florida purchase and possession counts. The district court agreed with the finding of the probation officer in the Presentence Report that these events represented three separate plans by Wessells to supply himself with an arsenal, each arising after a seizure ended the preceding one and required re-

---

**2.** Wessells' offenses are classified under Guidelines Section 2K2.1, Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition.

**3.** If the district court had grouped all the offenses into one group rather than into three separate groups, Wessells would have had a

base offense level of at most 12 (the level for Section 2K2.2 offenses under the 1987 Guidelines). The district court would then have been unable to increase that level to 15 on the basis of having three grouping units, as provided for in Section 3D1.4.

plenishment of the gun supply. The district court noted that the passage of an interval of time between each set of offenses further demarcated them into separate courses of conduct.

On the facts as they appear in this case, we cannot say that the district court's grouping decision was improper. Within each of the three separate courses of conduct that it found, the court followed the directive of Section 3D1.2 to group offenses involving the same harms. Nothing in Section 3D1.2 requires the court to group offenses which it finds were committed under separate courses of conduct. Wessells claims that the weapons seizures did nothing to alter the course of his overall scheme, and that the proper demarcation point for a common scheme or plan is the arrest date. We have found no explicit support in the Guidelines or the case law for the "arrest date" theory, however. In this particular case, the fact that Wessells was not arrested until the Florida incident is not alone determinative, for he could have been arrested after the first two weapons seizures as well. Moreover, the passage of time between each group of offenses supports the district court's determination that three distinct plans to acquire illegal firearms occurred.

Wessells additionally argues that the court's grouping was not based on the nature of the interest invaded as required by Section 3D1.2. He claims that the purposes of the GCA and NFA are so similar that violations of either act implicate substantially the same harm. As we have noted, the district court did group the GCA and NFA offenses together within each of the three separate courses of conduct. At least one appellate court has found, however, that violations of these Acts represent harms sufficiently dissimilar that they need not be grouped together under Sec-

tion 3D1.2. *See United States v. Pope*, 871 F.2d 506, 510 (5th Cir.1989) (holding that the thrust of a Section 922(g)(1) offense differs widely from an unregistered firearm offense that has nothing to do with the prior criminal record of the offender).[4]

We cannot say as a matter of law that the district court erroneously applied the Sentencing Guidelines in Wessells' case.

The district court's judgment is therefore AFFIRMED.

---

4. Wessells cites two cases in which this court reversed a district court's decision not to group multiple counts. *United States v. Toler*, 901 F.2d 399 (4th Cir.1990); *United States v. Young*, 916 F.2d 147 (4th Cir.1990). Neither of these cases is applicable here. In both we held only that, on the particular facts there presented, the district court should have found that the offenses arose out of the same act or were suffi-

ciently interrelated and therefore should have grouped them. In *Toler*, the offenses involved a child victim and thus came under Section 3D1.-2(b). In *Young*, the charges involved a single assault on a corrections officer which fit under Section 3D1.2(a) and (c). Wessells' offenses are victimless and are governed by Section 3D1.-2(d).