**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 96-4266

MOHAMMED NAEEM ZAKARIA,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Chief District Judge.
(CR-95-366)

Submitted: March 11, 1997

Decided: March 28, 1997

Before MURNAGHAN, HAMILTON, and LUTTIG,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John A. Keats, LAW OFFICES OF JOHN A. KEATS, Fairfax, Virginia; Richard E. Gardiner, Fairfax, Virginia, for Appellant. Helen F. Fahey, United States Attorney, Marcus J. Davis, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mohammed Naeem Zakaria was convicted pursuant to a conditional guilty plea of one count of delivery of firearms by a licensed firearms dealer to a person known by the dealer to reside in another state in violation of 18 U.S.C. § 922(b)(3) (1994) and 18 U.S.C. § 924(a)(1)(D) (1994). Zakaria raises three issues on appeal: (1) that his statements to law enforcement officers during a warrant search of his home should have been suppressed on the ground that probable cause did not exist for issuing the warrant because the information supplied to the magistrate was stale; (2) that the district court erred by granting the Government's motion in limine preventing him from presenting evidence as to his state of residence; and (3) that the district court should have reduced his base offense level to six pursuant to the sporting use/collection exception found in USSG § 2K2.1(b)(2).[1] Finding no reversible error, we affirm.

On the evening of May 19, 1994, four semi-automatic pistols were stolen from a hardware store/gun shop in Manassas, Virginia, by Peter Swett ("Swett"). Shortly after committing the theft, Swett contacted Zakaria, who Swett knew was federally licensed to sell firearms out of his parents' home in Manassas.[2] Later that evening, Zakaria met Swett and his girlfriend, Heather Carter ("Carter"), at a local fast-food restaurant. After lengthy negotiations, during which Swett informed Zakaria that the pistols were stolen, Zakaria agreed to purchase three of the pistols, and Zakaria placed the weapons in his car.

_____

[1] United States Sentencing Commission, Guidelines Manual (Nov. 1995).
[2] Swett eventually told authorities that he contacted Zakaria because Zakaria had previously told Swett that he (Zakaria) might be interested in purchasing stolen firearms. Zakaria, who was taking college courses at the time, lived with his parents.

Detective Brown ("Brown") of the Manassas City Police Department investigated the theft. On July 13, 1994, Brown interviewed a former store employee, Robert Stephens ("Stephens"), following a failed polygraph examination regarding the theft. Stephens admitted that he helped Swett plan the theft and that he knew Swett sold the pistols to Zakaria. Brown also interviewed Carter and one of Stephens' girlfriends, and both women corroborated the above facts. Brown also interviewed Swett, who was in jail on an unrelated charge. Swett initially denied having anything to do with the theft, but he eventually admitted to stealing the pistols and selling three of them to Zakaria.[3]

Based on the above information, a magistrate judge issued a search warrant for Zakaria's and Swett's homes and cars on the evening of July 14, 1994, and the warrants were executed that same night. Zakaria consented to the search, but no weapons were found. Zakaria agreed to speak to the officers outside, where he admitted purchasing the stolen pistols and selling them to his cousin. Prior to making this confession, Zakaria, though he was not in custody, was informed of his rights by Brown and an ATF agent. Zakaria voluntarily agreed to waive his rights and provided a written statement.

Zakaria was indicted on three counts of violating federal firearms laws. Prior to trial, Zakaria filed a motion to suppress the confession and written statement. Zakaria did not contest the voluntariness of the confession. Rather, he argued that the confession was tainted by the lack of probable cause for the search. The district court denied the motion, and Zakaria's first trial ended in a hung jury. Prior to his second trial, the Government filed a motion in limine to prevent Zakaria from presenting evidence as to his state of residence. The district court granted the motion, and Zakaria agreed to enter a conditional plea of guilty to the illegal sale of firearms, reserving the right to

_____

[3] Swett, who later agreed to cooperate with police, eventually told Brown that Zakaria told him at the time of purchase that the pistols would be out of the state by morning and that Zakaria planned on selling the weapons to his cousin in Philadelphia, who knew how to circumvent the customs laws in order to ship the firearms to Pakistan. The record, however, shows that Swett did not convey this information to Brown until some time after Zakaria's arrest.

3

appeal the denial of his motion to suppress and the granting of the motion in limine.

Findings of fact made by a district court in ruling on a motion to suppress are reviewed for clear error, but the ultimate suppression decision is reviewed de novo. United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). In reviewing whether probable cause existed for the issuance of the search warrant, "[g]reat deference is to be given a magistrate's assessment of the facts," and the"inquiry is directed to whether the magistrate had a substantial basis for his conclusion that probable cause existed." United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (citations omitted). This court has adopted a standard which "allows a magistrate to review the facts and circumstances as a whole and make a common sense determination of whether `there is a fair probability that the contraband or evidence of a crime will be found in a particular place.'" Id. (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Since we find that the information provided to the magistrate was not stale, the district court did not err in denying Zakaria's motion to suppress his voluntary confession and statement. The evidence supported the district court's finding that Swett did not tell Brown about Zakaria's intentions to sell the weapons quickly during the initial interview. Therefore, neither Brown nor the magistrate had reason to believe that Zakaria had already sold them. Moreover, the passage of time in itself is not necessarily dispositive. United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984) ("[P]robable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit.") (citation omitted). Absent any evidence to the contrary, it was reasonable for the magistrate to assume that, even after two months, the pistols could be found in Zakaria's car, where Carter saw him put them, or in his home. See United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988) (reasonable to assume individuals keep weapons in their homes).

We also affirm the district court's decision to grant the Government's motion in limine. This court will not disturb a district court's evidentiary rulings absent a clear abuse of discretion. United States

4

v. Russell, 971 F.2d 1098, 1104 (4th Cir. 1992), and we find no such abuse in the present case.

Zakaria wanted to present evidence as to his state of residence to support his claim that he sold the firearms from his personal inventory rather than from his business inventory. Under 18 U.S.C. § 922(a)(5) (1994), a private individual may sell a personal firearm to another private individual as long as both persons are residents of the same state. Zakaria claimed that he and his cousin were both residents of Florida because they possessed Florida driver's licenses.

We agree with the district court that Zakaria's sale to his cousin was from his business inventory as a matter of law and that any evidence concerning Zakaria's state of residence was immaterial. We find that the district court reasonably interpreted 18 U.S.C. § 923(c) (1994) and 27 C.F.R. § 178.125a (1996) to contain a default provision which provides that the sale of firearms held for less than one year which are not properly recorded pursuant to 27 C.F.R. § 178.125a(a), regardless of how acquired, are to be considered to be from the licensee's business inventory. Moreover, § 923(c) expressly states that "if such disposition or any other acquisition is made for the purpose of willfully evading the restrictions placed upon licensees by this chapter, then such firearm shall be deemed part of such licensee's business inventory." In the present case, substantial evidence was presented showing that Zakaria willfully attempted to evade the firearms laws by purchasing firearms which he knew were stolen with the intent to sell them to someone who he knew would illegally transport the pistols to Pakistan. Therefore, under the plain language of the statute, the sale was from Zakaria's business inventory, and his state of residence was immaterial.

Finally, we find that the district court properly calculated Zakaria's base offense level. It was undisputed that the offense of conviction was governed by USSG § 2K2.1(a)(7), which sets the base offense level at 12.[4] This court reviews "a question involving the legal interpretation of Guidelines terminology and the application of that terminology to a particular set of facts de novo," United States v. Wessells,

_____

[4] "Subsection (a)(7) includes the interstate transportation or interstate distribution of firearms." USSG § 2K2.1, comment. (n.8).

5

936 F.2d 165, 168 (4th Cir. 1991), but the determination as to the underlying facts is reviewed for clear error. United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989). In the case of a proposed reduction, the defendant bears the burden of showing that he is entitled to the reduction. United States v. Urrego-Linares, 879 F.2d 1234, 1238-39 (4th Cir. 1989).

Since we find that Zakaria failed to present any evidence to support his self-serving claim that he possessed the pistols for a sporting purpose or for collection, we need not address the issue of whether the exception found in USSG § 2K2.1(b)(2) applies to offenses of delivery as well as to those of possession. The Guidelines require that the weapons are possessed solely for a lawful sporting purpose or collection. In the present case, there was substantial evidence showing that Zakaria purchased the firearms with the sole intent of selling them to his cousin for illegal export to Pakistan; not for placing them in his private collection. Moreover, in determining whether or not to apply the exception, the district court may look to the "circumstances of possession." USSG § 2K2.1, comment. (n.10). In the present case, Zakaria knowingly purchased stolen weapons with the intent to further violate the firearms and customs laws of the United States. Thus, under the plain language of USSG § 2K2.1(b)(2) and taking into account the circumstances of possession, Zakaria was not entitled to a reduction in his base offense level based on the sporting purpose/collection exception.

We therefore affirm the findings and sentence of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED