665 S.E.2d 605

**James William SPOONE, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

No. 26529.

Supreme Court of South Carolina.

Submitted June 26, 2008.

Decided Aug. 11, 2008.

Rehearing Denied Sept. 4, 2008.

---

Appellate Defender Robert M. Pachak, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Karen Ratigan, all of Columbia, for Respondent.

Justice WALLER:

In this post-conviction relief (PCR) case, we granted certiorari to review the PCR court's order of dismissal. We affirm.

## FACTS

Pursuant to a written plea agreement, petitioner James William Spoone pled guilty to murder, first degree burglary, and possession of a weapon during the commission of a violent crime. Prior to the guilty plea, the State issued a notice of its

intent to seek the death penalty. In accord with the plea agreement, the trial court sentenced petitioner to life without parole for the murder and a consecutive life term for the burglary.[1]

The plea agreement expressly stated the following:

[Petitioner] agrees to waive any and all appeals, PCR applications, federal habeas petitions and any and all other methods of review of this guilty plea and sentence.

The agreement further stated that its "purpose and intent" was for petitioner to live the remainder of his natural life in prison without the possibility of parole. In addition, the State agreed to withdraw the notice of intent to seek the death penalty, but upon breach of the agreement by petitioner, the plea would be nullified and the State could once again pursue the death penalty.

At the plea hearing, petitioner stated he was 46 years old, had a ninth grade education, and worked as a pipe welder.[2] The trial court referenced the written plea agreement which was made an exhibit to the proceeding. Petitioner acknowledged that he had gone over the agreement with his attorneys and signed it. The following colloquy then occurred:

Trial Court: Just so there's no question about the agreement. You are pleading guilty to ... murder, ... possession [of a weapon], ... burglary first degree. Do you agree that you will waive all appeals, PCR applications, federal habeas corpus petitions and any other methods of review of your guilty plea and sentence today? Is that part of your agreement?

Petitioner: Yes, sir.

Petitioner also responded affirmatively when the trial court asked if he understood that a request for either judicial review

---

**1.** No sentence was imposed for the weapons charge. *See* S.C.Code Ann. § 16–23–490(A) (2003) (mandatory five-year sentence "does not apply in cases where the death penalty or a life sentence without parole is imposed for the violent crime").

**2.** Petitioner also stated he had been married, but the murder victim was his estranged wife. According to the facts recited at the plea hearing, petitioner went into his wife's son's house with a shotgun, found his wife hiding in the bathroom, and shot her three times. When arrested four hours later, he admitted the shooting to police.

or early release would constitute a breach of the agreement. Finally, the trial court again asked petitioner about this term of his guilty plea:

Trial Court: Do you understand that you have given up all of your rights as to appeal and to have this case further considered?

Petitioner: Yes, sir.

The trial court found petitioner's decision to plead guilty was "freely, voluntarily, knowingly and intelligently made with the advice and counsel of attorneys with whom the defendant says he is satisfied."

After petitioner filed the instant action for PCR, the State moved for dismissal based on the written plea agreement. After a brief hearing, the PCR court granted the State's motion. In the order of dismissal, the PCR court noted the plea transcript reflected that: (1) the plea agreement was thoroughly explained to petitioner; and (2) petitioner's decision to enter the agreement was knowing and voluntary.

## ISSUE

Did the PCR court err in enforcing the written plea agreement wherein petitioner waived his rights to direct appeal, PCR, and habeas corpus relief?

## DISCUSSION

Petitioner concedes that under federal law, a waiver of the right to collateral review is permitted where the circumstances surrounding the waiver show it is knowing and intelligent. Petitioner argues, however, that the waiver here was not knowing and intelligent because there was no discussion at the plea proceeding about the extent of his understanding of the waiver. Thus, petitioner contends this matter should be remanded to the PCR court for a merits hearing on his ineffective assistance of counsel claims.[3]

---

3. In petitioner's PCR application, he alleges ineffective assistance of trial counsel based on counsel's failure "to do a proper investigation of the facts and law of the case."

The issue of whether the right to appellate and post-conviction review may be waived by a written plea agreement has not been addressed by South Carolina state courts.

Regarding plea bargains generally, this Court has recognized and followed federal precedent. *See, e.g., State v. Thrift,* 312 S.C. 282, 292, 440 S.E.2d 341, 347 (1994) (discussing *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) and *United States v. Ringling,* 988 F.2d 504 (4th Cir.1993)). The *Thrift* Court explained that "a plea bargain rests on contractual principles," and therefore, "each party should receive the benefit of the bargain." *Id.; accord State v. Dingle,* 376 S.C. 643, 651–52, 659 S.E.2d 101, 106 (2008) (finding defendant received the benefit of his plea bargain).

As to a plea agreement containing a waiver of direct appeal rights, the Fourth Circuit has stated "[i]t is clear that a defendant may, in a valid plea agreement, waive [a federal statutory] right of appeal, just as more fundamental rights such as the right to counsel and the right to a jury trial may be waived." *United States v. Wessells,* 936 F.2d 165, 167 (4th Cir.1991) (citations omitted).[4] Regarding a waiver of the right to **collateral review,** the Fourth Circuit has held there is "no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights" in a plea agreement. *United States v. Lemaster,* 403 F.3d 216, 220 (4th Cir.2005) (citation and internal quotation marks omitted).

However, such a waiver will be held effective only if it is knowing and voluntary. *Wessells,* 936 F.2d at 167; *Lemaster,* 403 F.3d at 220; *see also United States v. Teeter,* 257 F.3d 14, 24 (1st Cir.2001) ("The baseline for any waiver of rights is that the defendant enter into it knowingly and voluntarily."). The requirement that the waiver be knowing and voluntary is used by all the federal circuits, albeit with some variations. *See generally* Derek Teeter, Comment, *A Contracts Analysis of Waivers of the Right to Appeal in Criminal Plea Bargains,* 53 U. Kan. L.Rev. 727 (2005).

---

4. *Accord United States v. Teeter,* 257 F.3d 14, 22 (1st Cir.2001) ("Since the Supreme Court repeatedly has ruled that a defendant may waive constitutional rights as part of a plea agreement, it follows logically that a defendant ought to be able to waive rights that are purely creatures of statute.") (citations omitted).

To determine whether a waiver is effective in the Fourth Circuit, the court examines the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused. *United States v. Broughton–Jones,* 71 F.3d 1143, 1146 (4th Cir.1995). In addition, the court will evaluate whether "the issue sought to be appealed falls within the scope of the waiver." *United States v. Cohen,* 459 F.3d 490, 494 (4th Cir.2006), *cert. denied* —— U.S. ——, 127 S.Ct. 1169, 166 L.Ed.2d 997 (2007).

In addition to federal court precedent, numerous state jurisdictions have upheld waivers of appellate rights and/or post-conviction relief, provided they were knowing, intelligent and voluntary. *See, e.g., People v. Vargas,* 13 Cal.App.4th 1653, 17 Cal.Rptr.2d 445, 449 (1993) ("an express waiver of the right of appeal made pursuant to a negotiated plea agreement is valid provided defendant's waiver is knowing, intelligent and voluntary"); *Stahl v. State,* 972 So.2d 1013, 1015 (Fla.Dist.Ct. App.2008) (a defendant can waive his right to collateral attack when the waiver is expressly stated in the plea agreement and it is knowingly and voluntarily made); *Allen v. Thomas,* 265 Ga. 518, 458 S.E.2d 107, 108 (1995) ("a waiver of a right to appeal or to seek post-conviction relief must be knowing, intelligent and voluntary"); *Jackson v. State,* 241 S.W.3d 831, 833 (Mo.Ct.App.2007) ("A movant can waive his right to seek post-conviction relief in return for a reduced sentence if the record clearly demonstrates that the movant was properly informed of his rights and that the waiver was made knowingly, voluntarily, and intelligently."); *People v. Seaberg,* 74 N.Y.2d 1, 543 N.Y.S.2d 968, 541 N.E.2d 1022, 1026 (1989) (waiver of appellate rights is enforceable if it is voluntary, knowing and intelligent; to make this determination, "all the relevant facts and circumstances surrounding the waiver, including the nature and terms of the agreement and the age, experience and background of the accused" must be considered).

Looking at the particular facts and circumstances of the instant case, including: (1) the background, experience and conduct of the accused, (2) the text of the plea agreement, and (3) the transcript of the plea hearing, we find petitioner's waiver was voluntarily, knowingly, and intelligently made. Although petitioner only has a ninth grade education, the text

of the written plea agreement was straightforward. Furthermore, the plea colloquy shows that the trial court specifically asked petitioner about the waiver both in the language of the plea agreement, as well as in plain language. Petitioner was represented by two attorneys at the trial level. Both lawyers attended the plea hearing and both signed the written plea agreement, along with petitioner himself.

Accordingly, we hold the PCR court correctly enforced the waiver and dismissed petitioner's PCR application.[5]

**AFFIRMED.**

TOAL, C.J., MOORE, PLEICONES and BEATTY, JJ., concur.

---

**5.** Petitioner argues the Fourth Circuit's opinion in *Wessells* supports his argument. In *Wessells*, the defendant had waived the right to directly appeal the sentence. The court found the waiver was unenforceable, however, because the plea court did not question the defendant "specifically concerning the waiver provision of the plea agreement" and the defendant "himself gave no indication of the degree to which he understood the waiver's import." *Wessells*, 936 F.2d at 168. In this case, however, the trial court did specifically question petitioner about the waiver provision more than one time and in more than one manner. Therefore, *Wessells* is clearly distinguishable.