723 S.E.2d 369

**Osiel Gomez NARCISO, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 27104.**

Supreme Court of South Carolina.

Heard Jan. 25, 2012.

Decided March 14, 2012.

26

Appellate Defender Elizabeth A. Franklin–Best, of Columbia, for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Matthew J. Friedman, all of Columbia, for Respondent.

Chief Justice TOAL.

Oseil Gomez Narciso (Petitioner) appeals his conviction for trafficking cocaine, and asserts that the circuit court erred in denying his motion to suppress drug evidence seized by police during a routine traffic stop. Following his conviction, Petitioner signed a Consent Order Granting Belated Direct Appeal (Consent Order) and waived his right to raise any other post-conviction relief (PCR) allegations. Petitioner requests this Court remand his case to determine whether that waiver was entered into knowingly and voluntarily. We affirm the circuit court's order denying Petitioner's motion to suppress, and remand the case for a determination as to whether Petitioner's waiver was entered into knowingly and voluntarily.

## FACTUAL/PROCEDURAL BACKGROUND

On August 3, 2005, the Beaufort County Sheriff's Office (BCSO) conducted a drug investigation focusing on Petitioner. Police believed that Petitioner may have been involved in the sale and distribution of cocaine in the Hilton Head/Bluffton area of Beaufort County. A sheriff's deputy received informa-

tion that Petitioner might be operating a vehicle in the area with expired license plates and possibly no driver's license. The deputy conducted a traffic stop of Petitioner after confirming that his license plates were indeed expired and suspended. A "back-up officer," arrived on scene shortly thereafter. Police placed Petitioner under arrest for operating the vehicle without a driver's license and removed him from the vehicle. Police then conducted a "K–9" search of the vehicle. The narcotics-detection dog used in the search alerted on drug residue on the vehicle, and police conducted a search of the cargo compartment. Police seized powdered cocaine from the vehicle, and charged Petitioner with knowingly and intentionally possessing a quantity of powder cocaine with a weight in excess of one hundred grams.

The Beaufort County Grand Jury indicted Petitioner for trafficking cocaine in excess of one hundred grams, and Petitioner proceeded to trial. The jury found Petitioner guilty as indicted. The circuit court sentenced Petitioner to twenty-five years imprisonment. Petitioner did not appeal his conviction or sentence, but subsequently filed a PCR application.

Petitioner claimed in his PCR application that his trial attorney failed to file a timely notice of appeal even after assuring Petitioner that he "had multiple grounds for appeal," and that he "would almost certainly be successful in overturning the convictions at the appellate level." According to the Consent Order, Petitioner's trial counsel admitted that he failed to file an appeal even though Petitioner requested one be filed. Thus, the State consented to granting Petitioner a belated direct appeal pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974)[1]. In the same Consent Order, Petitioner "waived his right to raise any other PCR allegations."

---

1. In *White v. State*, 263 S.C. 110, 113, 208 S.E.2d 35, 36 (1974), the defendant was convicted of burglary and sentenced to twenty years imprisonment. The defendant did not appeal his conviction or sentence, but subsequently filed a petition for PCR and a circuit court denied that relief in a full evidentiary hearing. *Id.* The defendant argued on appeal that the PCR judge should have ordered a new trial because the defendant did not knowingly and intelligently waive the right to appeal from his conviction and sentence. *Id.* at 117, 208 S.E.2d at 39. The defendant's trial counsel testified at the PCR hearing that he did not advise the defendant of his right to appeal because he was certain the defendant knew of his rights due to his prior criminal record. *Id.*

In a petition for writ of certiorari to this Court, Petitioner asserted that the PCR judge properly found that he did not waive his right to a direct appeal, and requested this Court remand his case to determine whether his waiver of any other PCR allegations was entered into knowingly or voluntarily. This Court granted the petition for writ of certiorari as to whether Petitioner knowingly and voluntarily waived his right to direct appeal, dispensed with further briefing on that question, and elected to proceed with further review of the direct appeal issue—the validity of the stop and search. Additionally, this Court granted review of whether Petitioner's waiver of any other PCR allegations was entered into knowingly and voluntarily.

## ISSUES PRESENTED

I. Whether the circuit court erred in admitting evidence obtained as a result of Petitioner's traffic stop.

II. Whether Petitioner's waiver of PCR allegations, other than the belated direct appeal issue, was entered into knowingly and voluntarily.

## STANDARD OF REVIEW

On appeal from a motion to suppress on Fourth Amendment grounds, this Court applies a deferential standard of review and will reverse only if there is clear error. *State v. Tindall*, 388 S.C. 518, 520, 698 S.E.2d 203, 205 (2010) (citation omitted). However, this Court is not barred from conducting its own review of the record to determine whether the trial judge's decision is supported by the evidence. *Id.*

---

The PCR judge found that the defendant did not knowingly and intelligently waive his right to appeal, and directed defendant's new counsel to secure a belated appeal to this Court from his conviction and sentence. *Id.* at 118, 208 S.E.2d at 39. This Court found that with regard to this belated appeal, no notice of appeal had been filed, and thus the Court had no jurisdiction over such an appeal. *Id.* at 119, 208 S.E.2d at 39. However, the Court reviewed the record in connection with the properly presented PCR appeal and ruled that "there was no reversible error in the trial and that there was not an arguably meritorious ground of appeal, even if notice of intention to appeal had been timely served...." *White*, 263 S.C. at 119, 208 S.E.2d at 40.

■ On certiorari in a PCR action, the Court applies the "any evidence" standard. Accordingly, this Court will affirm if any evidence of probative value in the record exists to support the findings of the PCR court. *Terry v. State*, 394 S.C. 62, 66, 714 S.E.2d 326, 328 (2011) (citation omitted).

## LAW/ANALYSIS

### I. Whether the circuit court erred in admitting evidence obtained as a result of Petitioner's traffic stop.

■ Petitioner argues that the facts presented by police to the circuit court did not rise to the level of "reasonable suspicion," and that he was "unreasonably seized." Thus, according to Petitioner, his Fourth Amendment rights were violated, and this Court should reverse his conviction. We agree with Petitioner that the search incident to arrest in this case violated his Fourth Amendment rights. However, for reasons explained below, the exclusion remedy is unavailable to Petitioner, and thus his conviction will stand.

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court initially explained the constitutionally permissible scope of a search incident to arrest. In that case, police ordered the driver of a speeding vehicle to pull over to the side of the road and stop. *Id.* at 455, 101 S.Ct. 2860. The policeman asked to see the driver's license and automobile registration and simultaneously smelled burnt marijuana. *Id.* at 455–56, 101 S.Ct. 2860. The officer directed the occupants out of the car and conducted a pat down of the four men. *Id.* at 456, 101 S.Ct. 2860. The officer then conducted a search of the passenger compartment of the car, including a black leather jacket belonging to Belton. *Id.* He unzipped one of the pockets of the jacket and discovered cocaine. *Id.*

Belton argued that the cocaine had been seized in violation of the Fourth and Fourteenth Amendments. *Belton*, 453 U.S. at 456–57, 101 S.Ct. 2860. The Court stressed the need to provide a "workable rule," and held that when a policeman has made a lawful custodial arrest of the occupant of an automobile, "he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 459–60, 101 S.Ct. 2860. The Court reasoned that the police

should also be allowed to examine the contents of any containers found within the passenger compartment, "for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." *Id.* at 460–61, 101 S.Ct. 2860 (citations omitted).

In the instant case, the police stopped Petitioner as part of an ongoing drug investigation, but primarily because the license tags on his automobile were expired. The police officer asked Petitioner for his driver's license, and verified that Petitioner did not possess a valid driver's license. Thus, he arrested Petitioner, and police searched Petitioner's vehicle incident to that arrest.

Petitioner challenged the search at trial. The circuit court judge initially expressed concern at the vehicle search following a mere traffic stop, but denied Petitioner's motion to suppress:

> It concerns me that the law enforcement in this case would risk this investigation by making a search under these circumstances without obtaining a search warrant. It would have been a very easy thing to do. There was just no reason that it needed to be done the way that they did it. . . . But after looking especially at the case of *New York v. Belton,* 433 [453] U.S. 454 [101 S.Ct. 2860], is [sic] the only thing that tips the scales in the State's favor in this case; and that is that a search may be made incident to an arrest of the passenger compartment of the vehicle, including containers located in the passenger compartment where the search incident to arrest even if the detainee has been arrested and removed from the vehicle.

Petitioner's trial took place in 2007, two years prior to the United States Supreme Court's holding in *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In *Gant,* the United States Supreme Court limited the expansive searches allowed by *Belton.* The Court noted that *Belton* had been widely understood to "allow a vehicle search incident to arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Id.* at 341, 129 S.Ct. at 1718. The Court found this reading incompatible with its previous decisions regarding the basic scope of searches incident to lawful custodial arrests.

*Id.* at 342–44, 129 S.Ct. at 1719 (citation omitted). Therefore the Court held that police may search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search or when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle. *Id.* (citing *Thornton v. United States,* 541 U.S. 615, 624–25, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004)).

■ Newly announced rules of constitutional criminal procedure must apply retroactively to all cases, "pending on direct review or not yet final, with no exception for cases in which a new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Petitioner's conviction has not yet become final on direct review. Thus, *Gant* applies retroactively to this case, and Petitioner may invoke its rule of substantive Fourth Amendment law as a basis for seeking relief. However, our analysis of the instant case is further controlled by the United States Supreme Court's decision in *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011).

■ In *Davis,* the defendant was charged and convicted of unlawful possession of a firearm based on discovery of a revolver in a stopped automobile in which he was the only passenger. *Id.* at ——, 131 S.Ct. at 2425–26. During the pendency of Davis's appeal, the United States Supreme Court decided *Gant.* The Eleventh Circuit applied *Gant's* new rule and held that the vehicle search incident to arrest violated Davis's Fourth Amendment rights. *Id.* at ——, 131 S.Ct. at 2426 (citation omitted). However, the court concluded that penalizing the arresting officer for following binding appellate court precedent would do nothing to deter Fourth Amendment violations. *Id.* (citing *United States v. Davis,* 598 F.3d 1259, 1265–66 (2010)).

The United States Supreme Court agreed, and reasoned that the acknowledged absence of police culpability doomed Davis's claim. *Id.* at ——, 131 S.Ct. at 2428. "Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningful deterrence' and culpable enough to be 'worth the price paid by the justice system.' " *Id.* (citing *Herring v. United States,* 555 U.S. 135,

32

144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009)). Excluding evidence in cases where the "constable" has scrupulously adhered to governing law deters no police conduct and imposes substantial social costs. *Davis*, —— U.S. at ——, 131 S.Ct. at 2434. Thus, the Court held that when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply. *Id.*

In the instant case, the search incident to arrest violated Petitioner's Fourth Amendment rights pursuant to *Gant.* However, excluding the evidence against Petitioner would not deter police misconduct because the police in this instance conducted a search incident to arrest pursuant to binding appellate precedent. *See id.* at ——, 131 S.Ct. at 2426–28. Moreover, exclusion of the evidence in this case would result in severe social costs, including the articulation of an inexplicable and undecipherable message to law enforcement regarding how to conduct a legal search. The protection of the Fourth Amendment can only be realized if the police are acting under a set of rules which make it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement. Wayne R. LaFave, *"Case–By–Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma,* 1974 Sup.Ct. Rev. 127, 142 (1974).

■ This Court will only reverse the circuit court's decision on a motion to suppress when there is clear error. *State v. Tindall,* 388 S.C. 518, 520, 698 S.E.2d 203, 205 (2010). The circuit court in this case applied the established law to a search executed pursuant to binding precedent. Thus, *Davis v. United States,* and our own standard of review, commands that the circuit court's decision be affirmed.[2]

---

**2.** Respondent argues that due to *Gant,* the "search-incident-to-arrest logic is no longer appropriate grounds for denying the suppression motion," and urged this Court to find the search was justified under the automobile exception. However, the decision in *Davis* being dispositive, this Court need not reach the automobile exception, or any other grounds, for upholding the search. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding that appellate courts need not discuss remaining issues when determination of a prior issue is dispositive).

## II. Whether the Petitioner's waiver of PCR allegations, other than the belated direct appeal issue, was entered into knowingly and voluntarily.

■ Petitioner signed a consent order granting belated direct appeal and waived his right to raise any other PCR allegations. He now asks this court to remand his case for a determination as to whether he knowingly and voluntarily waived his right to raise additional PCR claims.

■ In order to determine whether a waiver is effective, the court examines the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *Spoone v. State,* 379 S.C. 138, 143, 665 S.E.2d 605, 607 (2008) (citing *United States v. Broughton–Jones,* 71 F.3d 1143, 1146 (4th Cir.1995)). Numerous jurisdictions have upheld waivers of post-conviction relief, provided they were knowing and voluntary. *Id.* at 143, 665 S.E.2d at 607. A defendant's knowing and voluntary waiver of statutory or constitutional rights must be established by a complete record, and may be accomplished by a colloquy between the court and defendant, between the court and defendant's counsel, or both. *Brannon v. State,* 345 S.C. 437, 439, 548 S.E.2d 866, 867 (2001).

In *Spoone v. State,* 379 S.C. 138, 665 S.E.2d 605 (2008), this Court addressed whether a PCR court erred in enforcing a written plea agreement wherein the petitioner waived his right to direct appeal, PCR, and habeas corpus relief. The petitioner argued that his waiver was not knowing and intelligent because there was no discussion at the plea proceeding about the extent of his understanding of the waiver. *Id.* at 141, 665 S.E.2d at 607.

The Court took into account that although petitioner had only a ninth grade education, the text of the written plea agreement was straightforward. *Id.* at 143–44, 665 S.E.2d at 608. In addition, the plea colloquy showed that the PCR court specifically asked petitioner about the waiver both in the language of the plea agreement, and in "plain language." *Id.* Two attorneys accompanied petitioner to the plea hearing and both signed the written plea agreement along with petitioner. *Id.* Thus, this Court held that the PCR court correctly en-

forced the waiver and dismissed petitioner's PCR application. *Id.*

In this case, according to the Consent Order, Petitioner appeared before the PCR court on August 26, 2008. The Consent Order states that Petitioner waived his right to raise any other PCR allegations, but was "granted a belated direct appeal pursuant to *White v. State.*" The record before this Court of the colloquy between the parties consists of the following:

The court: What's the—what we got this morning?

Mr. Friedman: Your Honor, the first one is Osiel Gomez Narcisco [sic].

The court: All right.

Mr. Friedman: May we approach on this one?

The court: Yeah

(Bench conference)

Mr. Friedman: Thank you, Your Honor.

The court: Okay. Appreciate it. Thank you.

The Consent Order signed by Petitioner is straightforward. However, Petitioner used an English-speaking interpreter throughout his original trial, and apparently has, at best, a limited command of the English language. The colloquy provided to this Court does not show that the PCR court specifically asked Petitioner about the waiver, either in the language of the Consent Order, or in "plain language."

The State argues that Petitioner's case is distinguishable from *Spoone* because in that case the issue was "whether the right to appellate review and post-conviction review may be waived by a written plea agreement . . . ," and that "[Petitioner] proceeded to trial and was convicted." This is a distinction without a difference. The key issue in *Spoone* and in Petitioner's case is the circumstances surrounding the waiver of the right to appeal PCR allegations. Aside from the consent agreement, the record in this case does not support the conclusion that Petitioner entered into the agreement knowingly and voluntarily. Additionally, the colloquy between the court and the defendant in this case does not clearly establish that Petitioner knowingly and voluntarily waived his right to raise any other PCR allegations. This Court will

affirm the PCR court's findings if any evidence of probative value exists in the record. *Terry v. State*, 394 S.C. 62, 66, 714 S.E.2d 326, 328 (2011). However, finding that no such evidence exists in the instant case, we must remand for a determination as to whether Petitioner's waiver was entered into knowingly and voluntarily.

## CONCLUSION

We affirm the circuit court's denial of Petitioner's motion to suppress. However, the record does not adequately demonstrate whether Petitioner's waiver was in accordance with this Court's waiver jurisprudence. Thus, we remand the case for a determination on that issue.

**AFFIRMED IN PART, REMANDED IN PART.**

PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.