740 S.E.2d 512

**The STATE, Respondent,**

v.

**Mario TYNES, Appellant.**

Appellate Case No. 2010–162946.

No. 5109.

Court of Appeals of South Carolina.

Heard Oct. 31, 2012.

Decided April 3, 2013.

Tommy A. Thomas, of Irmo, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Christina J. Catoe, all of Columbia, for Respondent.

THOMAS, J.

Mario Tynes appeals his convictions for first-degree burglary, armed robbery, possession of marijuana with intent to distribute, and unlawful carrying of a pistol. We affirm.

**FACTS/PROCEDURAL HISTORY**

On October 13, 2007, the Horry County Police Department received a radio dispatch to be on the lookout for a white older model four-door Ford Crown Victoria without hubcaps. According to the dispatch, the vehicle was travelling on Arrowhead Boulevard and was occupied by several black males who were waving guns in the air.

About one to two minutes later, Horry County Police Officer Justin Cole saw a vehicle matching the description given in the dispatch. Cole initiated a traffic stop on the car and directed the occupants to pull over to a gas station about two miles from Flint Lake Apartments, where the vehicle was first sighted. Cole saw five black males in the vehicle, most of

whom were wearing black clothing. Officer Larry Graham, who was on duty in the vicinity, heard the dispatch and went to assist Cole in the traffic stop.

The occupants were ordered to exit the car to be patted down for weapons. Cole and Graham searched the vehicle and found two firearms and three large plastic baggies, each filled with a green leafy substance. All the occupants were then arrested and given *Miranda* warnings. Videotape evidence showed that Tynes was in the vehicle, and Cole also identified Tynes as one of the occupants.

The following day, Horry County Police Officer John Stewart received a telephone call from a woman inquiring about her son (Victim), a college student living at Flint Lake Apartments who had recently been hospitalized for injuries he sustained during a home invasion. Victim recently purchased three pounds of marijuana and allowed a classmate to come to his apartment to buy two pounds of it. While Victim was counting the cash for the transaction, several men with guns suddenly ran up the stairs of his building into his apartment. They took the cash and most of the drugs, beat Victim with the butt of a gun, and threw him around.

Although police had talked with Victim while he was in the hospital, no one had yet contacted him after his release, prompting his mother's call. Stewart then called on Victim, who gave him a white baseball cap and a cartridge that were found in his apartment after the incident.

On January 4, 2008, the Horry County Grand Jury indicted Tynes on one count of unlawful carrying of a pistol, one count of possession of marijuana with intent to distribute, one count of first-degree burglary, and one count of armed robbery. He was scheduled to be tried with co-defendants Michael Jerrod Lackey and Joshua Readon in May 2010, both of whom were charged with the same offenses.

Before jury selection, Joshua Readon requested to enter an *Alford* plea on the charges of armed robbery and possession with intent to distribute marijuana. The trial court accepted the pleas, but delayed sentencing to allow the State to decide whether or not to make a recommendation based on Readon's cooperation in prosecuting the other two defendants. The

jury found both Tynes and Lackey guilty as charged, and Tynes appeals.

## ISSUES

I.  Should the trial court have suppressed the evidence found during the search of the Crown Victoria based on (1) the inconsistency and unreliability of the officers' testimony and (2) improper bolstering by a witness who allegedly was not properly sequestered?

II. Did the trial court commit reversible error in refusing to admit evidence that a witness's agreement to testify for the State included a condition that the State could require the witness to submit to a polygraph examination?

III. Did the trial court err in allowing the State's DNA expert to testify that Tynes could not be excluded as a contributor of DNA found on a gun used in the crime?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Pagan,* 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.* An appellate court "will only reverse the circuit court's decision on a motion to suppress when there is clear error." *Narciso v. State,* 397 S.C. 24, 32, 723 S.E.2d 369, 373 (2012). "A trial court's Fourth Amendment suppression ruling must be affirmed if supported by any evidence, and an appellate court may reverse only when there is clear error." *State v. Taylor,* 401 S.C. 104, 108, 736 S.E.2d 663, 665 (2013). "A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or commission of legal error that results in prejudice to the defendant." *State v. Adams,* 354 S.C. 361, 377, 580 S.E.2d 785, 793 (Ct.App.2003).

## LAW/ANALYSIS

### I. Vehicle Search

Tynes first argues the trial court should have suppressed the evidence recovered during the search of the Crown Victoria because (1) the testimony of the officers and the police report contained inconsistent and unreliable statements concerning when and where drugs were found in the car and thus could not support a finding of probable cause and (2) one of the officers was not properly sequestered during the suppression hearing. We disagree.

■ "[I]f there is probable cause to search a vehicle, a warrant is not necessary so long as the search is based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." *State v. Weaver*, 374 S.C. 313, 320, 649 S.E.2d 479, 482 (2007).

■ Officer Cole testified that he stopped the car because it matched a description of a vehicle involved in possible criminal activity in the vicinity where he was working at the time, and Tynes does not challenge the propriety of the traffic stop. Officer Graham testified that after he arrived at the scene and the occupants were ordered from the car, he spotted marijuana in plain view on the front floorboard of the vehicle, and as the trial court found, videotape evidence played outside the jury's presence corroborated Graham's testimony. In addition, Officer Cole testified that once the occupants were outside the car, he saw a magazine clip in plain view on the back seat. The officers' observation of the magazine clip, when considered with the report of suspicious activity and videotape evidence, was sufficient to establish exigent circumstances to justify searching the vehicle. *See State v. Bultron*, 318 S.C. 323, 332, 457 S.E.2d 616, 621 (Ct.App.1995) (upholding a warrantless search of a vehicle in which police agents observed a handgun on the floor before arresting the occupants and stating the standard for a warrantless search as "a justifiable determination, based on the totality of the circumstances and in view of all the evidence available to law enforcement officials at the time of the search, that there exists a practical, nontechnical probability that a crime is being committed or has been committed and incriminating evidence is involved"); *id.* ("[U]nder the automobile excep-

tion, if probable cause exists to justify the warrantless search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its content that may conceal the object of the search.").

We further hold the alleged inconsistencies between the police report and the officers' testimony do not necessarily warrant reversal of the trial court's finding that the search of the vehicle was lawful. *See State v. Asbury*, 328 S.C. 187, 193, 493 S.E.2d 349, 352 (1997) ("In criminal cases, appellate courts are bound by fact findings in response to preliminary motions where there has been conflicting testimony or where the findings are supported by the evidence and not clearly wrong or controlled by an error of law."); *State v. Morris*, 395 S.C. 600, 608, 720 S.E.2d 468, 471 (Ct.App.2011) ("The appellate court's task in reviewing the trial court's factual findings on a Fourth Amendment issue is simply to determine whether *any* evidence supports the trial court's findings." (emphasis added)).

Tynes further suggests that Graham's testimony was "tainted" because Graham, who testified after Cole during the suppression hearing, was close enough to the courtroom to hear Cole testify and thus alter his version so that it would be consistent with Cole's statements and reconcile any discrepancies between Cole's testimony and the police report. Tynes maintains that given these circumstances, the trial court should have allowed him to explore whether Graham was within earshot of Cole's testimony or made a finding that probable cause to search the car was lacking. We reject this argument.

The trial court never made any order as to where the witnesses were to wait before they were called; thus, there was no violation of any sequestration order. Furthermore, at trial, Tynes never asked the trial court to allow him to question Graham or any other witnesses regarding whether Graham was able to hear Cole testify. *See State v. Dickman*, 341 S.C. 293, 295, 534 S.E.2d 268, 269 (2000) (stating the defendant's failure to raise an issue to the trial court precluded him from raising it on appeal).

II.   Polygraph Agreement

Tynes next argues that he should have been allowed to present evidence that a witness for the State had to undergo polygraph testing at the State's request as part of his agreement with the State. We disagree.

The witness, Craig Collins, admitted during direct examination that he had been arrested and charged with armed robbery in connection with the incident leading to the charges against Tynes and Lackey. After consulting a lawyer, Collins decided to cooperate with the State and signed an agreement to this effect.

As the solicitor was preparing to proffer the agreement, the trial court, after conferring off-the-record with counsel, sent the jury from the courtroom. In the jury's absence, the court *sua sponte* expressed concerns about the admissibility of a provision in the agreement that Collins would be subject to polygraph testing at the State's request. Stating that "[p]olygraphs are clearly not admissible in this State and we don't recognize [their] reliability," the court stated it would not allow evidence about the requirement. Both defendants objected to the restriction, arguing that even though polygraph results are inadmissible, they should be allowed to ask Collins if he was ever requested by the State to take a polygraph pursuant to the agreement.

The trial court stated it raised the issue of the admissibility of the polygraph provision because of concerns that the provision would amount to an impermissible bolstering of Collins's credibility as a witness. We hold this concern was justified. Here, the State's decision not to exercise this right would have had the effect of bolstering Collins's credibility.[1] *See State v. Johnson*, 376 S.C. 8, 11, 654 S.E.2d 835, 836 (2007) (citing the "general rule" "that no mention of a polygraph test should be placed before the jury" and holding the trial court did not abuse its discretion in granting a new trial based on a reference by a state's witness to a polygraph test that she had taken); *State v. McGuire*, 272 S.C. 547, 551, 253 S.E.2d 103, 105 (1979) ("Mention of a polygraph test might arise in any

---

1. Tynes's co-defendant acknowledged that the State did not make Collins submit to a polygraph.

one of many ways. The safer course would normally be to avoid any mention of a polygraph examination.").

Furthermore, Tynes also had the opportunity to impeach Collins and did so through eliciting admissions from Collins about (1) inconsistencies between Collins's written statements and his testimony at trial, (2) the fact that Collins cooperated with the State only when he realized that he himself was facing charges from the incident, and (3) Collins's own criminal activity. Considering these circumstances, we hold that whether or not the trial court should have allowed the jury to be informed that Collins's agreement with the State included a condition that he was subject to polygraph testing, Tynes has failed to show prejudice from this ruling and is therefore not entitled to a new trial on this ground. *See State v. Johnson*, 334 S.C. 78, 93, 512 S.E.2d 795, 803 (1999) (stating an appellant "must demonstrate more than error in order to qualify for reversal" and "the errors must adversely affect his right to a fair trial").

## III. DNA Evidence

Finally, Tynes argues the trial court should not have allowed Katie Coy, the State's DNA expert, to testify that he could not be excluded as a minor contributor of blood found on one of the guns in the car. We disagree.

One of the other participants in the crime identified Tynes as the person who had pistol-whipped Victim during the robbery. Blood was collected from one of the guns found in the Crown Victoria, and DNA testing indicated that (1) Victim was a contributor and (2) except for Tynes, all participants including Lackey were excluded by the test as minor contributors. Although Tynes agreed that Coy could testify that the DNA testing excluded other individuals, he objected to any reference to the determination that he himself could not be excluded as a contributor. Over Tynes's objection, however, the trial court allowed Coy to testify what the DNA test indicated about Tynes as well as about the other participants.

We have concerns that Tynes may have waived any objection to this testimony. The record indicates the trial court engaged both Tynes and the State in lengthy discussion about what statements each would consider acceptable for the jury

to hear. Ultimately, it appears Tynes agreed it was fair to include testimony from the expert that he could not be excluded as a minor contributor of the DNA as long as there was testimony that he was not found to be a match.

In any event, we hold the trial court acted within its discretion in permitting Coy to testify that Tynes could not be excluded as a contributor to the DNA found on the gun.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. "Unfair prejudice means an undue tendency to suggest decision on an improper basis." *State v. Wiles*, 383 S.C. 151, 158, 679 S.E.2d 172, 176 (2009). Here, Coy never said Tynes was a possible contributor. Moreover, when Tynes cross-examined her, she acknowledged that he was not developed as a scientific match for the DNA that she tested. Accordingly, we hold the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice and find no error in the trial court's admission of this evidence.

## CONCLUSION

We hold the trial court acted within its discretion in admitting the evidence found during the search of the car and in allowing the State to present testimony that Tynes could not be excluded as a contributor to DNA found on a gun seized during the search. We further affirm the trial court's refusal to allow the jury to be informed that Collins's agreement with the State included a condition that he undergo polygraph testing if the State so requested.

**AFFIRMED.**

HUFF and GEATHERS, JJ., concur.